IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-021

Filing Date: April 29, 2009

Docket No.  30,536

LAURA A. CORDOVA,

        Plaintiff-Respondent,

v.

WORLD FINANCE CORPORATION OF
NEW MEXICO,

        Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
Eugenio S. Mathis, District Judge

Barnett Law Firm, P.A.
Mickey D. Barnett
Phillip W. Cheves
David A. Garcia
Amy B. Bailey

Albuquerque, NM

Wolf and Fox, P.C.
Amy B. Bailey
Albuquerque, NM

for Petitioner

Feferman & Warren
Richard N. Feferman
Robert Dale Treinen
Albuquerque, NM

Public Justice, P.C.
F. Paul Bland, Jr.
Washington, D.C.

1

for Respondent

Doerr & Knudson, P.A.
Randy J. Knudson
Portales, NM

AARP Foundation
Deborah M. Zuckerman
Washington, D.C.

for Amicus Curiae
AARP

Gary K. King, Attorney General
David K. Thomson, Assistant Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

for Amicus Curiae
Office of the Attorney General

## OPINION

**DANIELS, Justice.**

**{1}**     This case requires us to review the validity of a small loan company's form arbitration provision that would limit a borrower to mandatory arbitration as a forum to settle all disputes whatsoever, while reserving for the lender the exclusive option of access to the courts for all remedies the lender is most likely to pursue against a borrower.  We hold that such an inherently one-sided agreement is against New Mexico public policy and is therefore void as unconscionable.  Although we differ somewhat in our legal analysis, we affirm the decision of the Court of Appeals and hold that the district court was correct in denying the loan company's motion to compel arbitration of the borrower's judicial claims.

## I.     BACKGROUND

**{2}**     Defendant World Finance Corporation of New Mexico (World Finance) specializes in small loans at over 100% annual interest rates.  Over the course of several years, Plaintiff Laura Cordova (Cordova) signed ten separate loan agreements with World Finance that grew out of just two original loans.  The loans were repeatedly rolled over into new loans, and Cordova never succeeded in paying off any of them before signing each new agreement.

**{3}**     All ten of World Finance's loan agreements included the company's separately-

2

signed form arbitration attachment. The first paragraph of the printed arbitration provision broadly stated that the parties must arbitrate all disputes arising under, but not limited to:

- the Loan Agreement and any previous or subsequent loan from Lender and any previous or subsequent retail installment sales contract made with/or assigned to Lender including all documents relating to same and insurance purchased in connection with the transaction;
- whether the claim or dispute must be arbitrated and the validity of this Agreement;
- any claim based upon fraud or misrepresentation;
- any claim based upon a federal or state statute including, but not limited to, the Truth-in-lending Act and Regulation Z; the Equal Credit Opportunity Act and Regulation B, state insurance laws, state usury and lending laws including state consumer protection statutes and regulations;
- any dispute about closing, servicing, collecting or enforcing the Loan Agreement or other loan or retail installment sales agreements between Lender and Borrower

**{4}** However, a separate paragraph in the form also provided that the lender alone had the exclusive and unlimited alternative to seek any judicial remedies it might otherwise have available to it in law or in equity in the event of a default by the borrower:

> Notwithstanding this Agreement, in the event of a Default under the Loan Agreement, Lender may seek its remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession. Lender may also exercise its other remedies provided by law (such as, but not limited to, the right of self-help repossession under Article 9 of the Uniform Commercial Code or other applicable law and/or the foreclosure power of sale). This section shall not constitute a waiver of Lender's rights thereafter to seek specific enforcement of its rights under this Agreement in the event Borrower shall assert a counterclaim or right of setoff in such judicial or non-judicial action.

**{5}** Cordova ultimately sought the assistance of an attorney, who filed on her behalf in the district court for San Miguel County a complaint for injunctive relief and damages, alleging that World Finance had engaged in unfair, deceptive, and unconscionable trade practices within the meaning of the New Mexico Unfair Practices Act. *See* NMSA 1978, §§ 57-12-1 to -24 (1967, as amended through 2003).

**{6}** The complaint alleged that World Finance had engaged in unreasonable and tortious debt collection practices, including personal visits and almost daily phone calls that caused Cordova to lose her job, despite her repeated pleas for World Finance to cease contacting her employers and to cease contacting her at work. Agents of World Finance allegedly also called her at home nearly every day during her six-week recuperation from lung surgery.

She claimed damages resulting from lost wages, lost employment benefits, lost time, invasion of privacy, and emotional distress.

**{7}** In response to the complaint, World Finance filed a motion to compel arbitration, arguing that Cordova was bound by the mandatory arbitration clauses that had been a standard part of all ten of the form loan agreements. The motion argued that the arbitration provisions were enforceable against Cordova pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006), and the New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001), and that Cordova was precluded from seeking judicial relief for any resolution of her claims.

**{8}** Cordova countered with a legal memorandum in opposition, arguing that World Finance's arbitration clause was "so one-sided that it cannot be enforced" by providing that "any claims brought against [World Finance] by a consumer must be submitted to arbitration, but that any claims that it would conceivably want to bring . . . may proceed in court."

**{9}** After a hearing, the district court denied World Finance's motion to compel arbitration, and World Finance appealed.

**{10}** The Court of Appeals affirmed the district court, holding that the conflicting and one-sided arbitration provisions rendered the entire arbitration agreement illusory and unenforceable. *Cordova v. World Fin. Corp. of N.M.*, No. 27,436, slip op. at 3 (N.M. Ct. App. June 20, 2007). This Court granted World Finance's petition for writ of certiorari to review that decision.

## II.    STANDARD OF REVIEW

**{11}** All issues before us are subject to a de novo standard of review. We apply a de novo standard of review to a district court's denial of a motion to compel arbitration. *See Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 4, 137 N.M. 57, 107 P.3d 11. "Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Id.* By both statute and case law, we review whether a contract is unconscionable as a matter of law. *See* NMSA 1978, § 55-2-302 (1961) (providing that courts, as a matter of law, may police against contracts or clauses found unconscionable); *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 19, 144 N.M. 464, 188 P.3d 1215 (providing the issue of the unconscionability of a contract "is a matter of law and is reviewed de novo").

## III.    DISCUSSION

### A.    The Theories Underlying the Opinions Below

**{12}** While the primary concern of the courts below was the completely one-sided nature

4

of the arbitration clauses, there is some uncertainty about the legal theories employed in reaching the conclusions of all judges concerned. Cordova's district court briefing had specifically relied on case law that articulated either "illusory" theories or "unconscionability" theories in striking down one-sided arbitration agreements. In its succinct order denying World Finance's motion to compel arbitration as "not well taken," the district court did not specify any particular legal theory underlying its ruling.

**{13}** In an unpublished memorandum opinion, the Court of Appeals affirmed the district court's ruling, without specifically mentioning the terms "substantive unconscionability" or "procedural unconscionability," on the basis of precedents that held particular one-sided arbitration agreements to be "illusory" and therefore unenforceable: "[B]ecause the arbitration agreements attempt to bind Defendant (the Lender) only to arbitrate when it so chooses, but they do not extend the same rights to Plaintiff, the arbitration agreements are illusory and unenforceable." *Cordova*, No. 27,436, slip op. at 2, 3.

**{14}** The opinions specifically relied on by the Court of Appeals were *Piano*, 2005-NMCA-018, and *Heye v. Am. Golf Corp.*, 2003-NMCA-138, 134 N.M. 558, 80 P.3d 495. Both *Piano* and *Heye* involved at-will employees who signed employer-drafted arbitration agreements after they had already entered into employment contracts, but in both cases the employers specifically reserved the right to change their own obligations at any time. *Piano*, 2005-NMCA-018, ¶ 8; *Heye*, 2003-NMCA-138, ¶ 1. Both of those arbitration agreements had been declared unenforceable for lack of consideration. *Piano*, 2005-NMCA-018, ¶ 1; *Heye*, 2003-NMCA-138, ¶ 15. The only possible consideration provided by the employers for the later-added arbitration agreements was an apparent promise to be mutually bound by mandatory arbitration. *Piano*, 2005-NMCA-018, ¶ 11; *Heye*, 2003-NMCA-138, ¶ 9. *Heye* and *Piano* determined that any such promises were meaningless, in light of the employers' reservation of the unilateral option to modify or terminate those promises at any time. *Piano*, 2005-NMCA-018, ¶ 14; *Heye*, 2003-NMCA-138, ¶ 15. The apparent covenants of the employers were therefore illusory, and the arbitration contract clauses were resultingly void for lack of consideration to the employees. *Piano*, 2005-NMCA-018, ¶ 14; *Heye*, 2003-NMCA-138, ¶ 15.

**{15}** In its opinion below, the Court of Appeals similarly considered the arbitration provisions in this case to be illusory. *Cordova*, No. 27,436, slip op. at 3. Unlike the contracts in *Piano* and *Heye*, however, the arbitration provisions at issue here were not capable of being modified by World Finance after the fact. They were one-sided from the beginning.

**{16}** Because World Finance did not reserve the unilateral right to modify or eliminate any of its contractual obligations, and because consideration was provided in the new extensions of credit that accompanied each of the questioned arbitration agreements, we agree with the position of World Finance that this case does not fit within the *Piano* and *Heye* analytical framework. We have concluded that the most appropriate way in which to evaluate these agreements is through the framework of a traditional unconscionability analysis, as urged

5

by Cordova and by amici curiae AARP and the Attorney General of New Mexico.

**B.      Reviewability of the Unconscionability Doctrine**

**{17}**      World Finance contends that the unconscionability issue has not been properly presented and preserved, and is therefore not before us for consideration. We disagree. To support Cordova's arguments in the district court that "World Finance Company's arbitration agreement is so one-sided that it cannot be enforced," Cordova did not rely solely on the void-as-illusory contract precedents of *Piano* and *Heye*. Cordova's counsel specifically relied on, and provided copies of, reported opinions striking down similar one-sided small-loan company arbitration clauses on an explicit unconscionability theory. *See Brown v. Tenn. Title Loans, Inc.*, 216 S.W.3d 780 (Tenn. Ct. App. 2006); *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155 (Wis. 2006). The district court ruled in favor of Cordova without stating the basis for its order. In the Court of Appeals, this case was disposed of with a memorandum opinion on the basis of World Finance's docketing statement and memorandum in opposition to summary affirmance, without opportunity for Cordova to submit further briefing. In her briefing before this Court, Cordova has continued to argue both her unconscionability and illusory-contract theories. Cordova therefore has not abandoned the preserved issue of unconscionability.

**{18}**      Even if the issue had not been preserved below, it is established law that our appellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair to the appellant to affirm. *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828; *see State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, 'we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below.'" (citation omitted)). "Generally, an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal." *State v. Todisco*, 2000-NMCA-064, ¶ 11, 129 N.M. 310, 6 P.3d 1032 (citation omitted). The factual allegations that are addressed in this opinion are the factual allegations that have been the basis of all the litigation throughout the course of this case.

**{19}**      It is not unfair to World Finance for us to address a central issue in these circumstances, one which World Finance has had ample opportunities to address and has in fact addressed. Unconscionability was the primary focus of all of the appellate briefs of Cordova and amici, and World Finance's able counsel availed themselves of the opportunity to file replies to each one of those briefs, albeit while objecting to consideration of the issue by this Court. Unconscionability was a central focus of the oral arguments in this case. There is no principled reason why it should not be addressed and resolved by this Court.

**C.      Unconscionability Analysis**

**{20}**      Cordova has argued from the outset that the form arbitration provisions

6

accompanying the loan agreements in this case are grossly unfair and one-sided, and therefore substantively unconscionable, in prohibiting any access to the courts by World Finance's borrowers, while reserving to World Finance alone the exclusive option of seeking its preferred remedies through litigation.

**{21}** Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party. *Guthmann v. La Vida Llena*, 103 N.M. 506, 510, 709 P.2d 675, 679 (1985); *see also Builders Contract Interiors, Inc. v. Hi-Lo Industries, Inc.*, 2006-NMCA-053, ¶ 8, 139 N.M. 508, 134 P.3d 795 ("We will allow equity to interfere . . . only when 'well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality' justify deviation from the parties' contract." (quoted authority omitted)). The doctrine of contractual unconscionability can be analyzed from both procedural and substantive perspectives. *See Fiser*, 2008-NMSC-046, ¶ 20 (striking down a substantively unconscionable arbitration clause as violative of New Mexico public policy).

**{22}** Substantive unconscionability concerns the legality and fairness of the contract terms themselves. *See id.* ("Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair."). The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns. *Guthmann*, 103 N.M. at 511, 709 P.2d at 680.

**{23}** Procedural unconscionability goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other. *Id.* at 510, 709 P.2d at 679.

**{24}** While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all. *See Fiser*, 2008-NMSC-046, ¶ 22 (invalidating an arbitration clause without a finding of procedural unconscionability where "there has been such an overwhelming showing of substantive unconscionability"); *Guthmann*, 103 N.M. at 510, 709 P.2d at 679 ("The weight given to procedural and substantive considerations varies with the circumstances of each case."); *see also* 7 Joseph M. Perillo, *Corbin on Contracts* § 29.1, at 377 (rev. ed. 2002) (observing that there is "no basis in the text" of Article 2 of the Uniform Commercial Code for concluding that the defense of unconscionability cannot be invoked unless the contract or clause is both procedurally and substantively unconscionable). Procedural and substantive unconscionability often have an inverse relationship. The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d

7

1101, 1106 (9th Cir. 2003); *see also* 1 E. Allan Farnsworth, *Farnsworth on Contracts* § 4.28, at 585 (3d ed. 2004) ("A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance.").

**{25}** Contract provisions that unreasonably benefit one party over another are substantively unconscionable. *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶¶ 10, 14, 133 N.M. 661, 68 P.3d 901. In *Padilla*, an automobile liability insurance policy's arbitration clause required both parties to arbitrate their claims, but the agreement contained a one-sided appeal provision that only allowed an appeal to the courts from an arbitration award where it was greater than, but not less than, the minimum liability coverage required by the Mandatory Financial Responsibility Act, NMSA 1978, §§ 66-5-201 to -239 (1978, as amended through 2001). *Id*. ¶ 2. In striking down the one-sided appeal provision as substantively unconscionable, this Court observed that

> such escape hatch clauses are not truly equal in their effect on the parties. This is true because both parties are bound by a low award, when an insurance company is unlikely to appeal, and not bound when there is a high award, when an insurance company is more likely to appeal. Thus, the benefits of the clause truly only favor the insurer, which can use the clause to escape the unwary claimant.

*Id*. ¶ 10 (quoted authority omitted).

**{26}** In this case, World Finance's one-sided arbitration provisions are even more egregious than those in *Padilla.* The non-arbitration options that World Finance reserved exclusively to itself in paragraph two of its form agreement did not depend on the amount of any prior arbitration award, as was required in *Padilla*. In all cases of default, which is the most likely reason for lenders to take action against their borrowers, it broadly reserved the option of availing itself directly of any and all "remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession."

**{27}** In striking contrast, as one of World Finance's borrowers, Cordova had no rights under the form agreement to go to any court for any reason whatsoever, including disputes about the validity of any of World Finance's form loan or arbitration documents, issues about the terms of World Finance's contract, claims for fraud and misrepresentation, grievances related to servicing or collection, or claims based on federal or state consumer protections, such as the New Mexico Unfair Practices Act, and tortious debt-collection causes of actions asserted in Cordova's complaint. Those are the claims a borrower is most likely to litigate in a dispute with a lender, and the very ones the lender is least likely to want to litigate. It is highly unlikely that World Finance will find itself at odds with the contractual terms of its own form agreements, or the circumstances of its lending or collection practices, or claim it was the victim of a fraudulent consumer scheme, or have any other reason to make a claim against its borrowers for violation of consumer protection laws.

8

**{28}** These same kinds of one-sided arbitration schemes in consumer loan agreements have been found to be substantively unconscionable by other courts. *See Wis. Auto*, 714 N.W.2d at 172 ("In many of the cases in which a contract provision has been held to be substantively unconscionable, a creditor has unduly restricted a debtor's remedies or unduly expanded its own remedial rights."). *Wis. Auto* addressed an arbitration clause that required a consumer to arbitrate all claims, disputes, or controversies related to a loan agreement, while permitting the lender to enforce any payment obligations owed by way of judicial process, or "any other procedure that a lender might pursue to satisfy the borrower's obligation under the loan agreement." *Id.* The court concluded that the arbitration provision was overly one-sided in allowing the lender to carve out a choice of forum for its own preferred claims. *Id.* at 173; *see id.* at 173 n.56 (compiling unconscionability precedents that similarly invalidated one-sided arbitration provisions that required the weaker parties to arbitrate).

**{29}** In *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004), the Tennessee Supreme Court held that an arbitration clause in an automobile finance agreement that required consumers to bring all claims in arbitration, while permitting "practically all" of the car dealer's potential claims the option of resolution in a judicial forum, was unreasonably favorable to the car dealer and oppressive to the consumer. The court noted that "it is hard to imagine what other claims it would have against her other than one to recover the vehicle or collect a debt." *Id.*; *see also Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 862 (W. Va. 1998) ("[W]e hold that where an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable and, therefore, void and unenforceable as a matter of law.").

**{30}** The courts that have criticized businesses that insert unfair and one-sided arbitration clauses into their agreements with their customers have not done so because they are hostile to arbitration agreements per se:

> The laudable policy behind enforcing arbitration agreements is the belief that they provide a less expensive, more expeditions [sic] means of settling litigation and relieving congested court dockets. However, they should not be used as a shield against litigation by one party while simultaneously reserving solely to itself the sword of a court action.

*Showmethemoney Check Cashers, Inc. v. Williams*, 27 S.W.3d 361, 367 (Ark. 2000).

**{31}** World Finance argues that this agreement does not meet the test of unconscionability because it is not one that "only someone out of his or her senses, or delusional, would enter into." This colorful language, transplanted to the United States long ago from English courts, has occasionally been used to characterize an unconscionable contract as one "'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *Hume v. United States*, 132 U.S. 406, 411

9

(1889) (quoting *Earl of Chesterfield v. Janssen*, 2 Ves. Sen. 125, 155, 28 Eng. Rep. 82, 100 (Ch. 1750)). While this dramatically expressive characterization concededly has made it into New Mexico case law, such as *Guthmann*, 103 N.M. at 511, 709 P.2d 675 at 680, if literally applied it would be inconsistent with all the New Mexico cases that have struck down contracts for unconscionability, as well as most of those from other jurisdictions. Our law has never really required that a person seeking relief from an unconscionable contract must first establish that he or she actually had to have been a madman or a fool to sign it. It is sufficient if the provision is grossly unreasonable and against our public policy under the circumstances. The repetition of this unhelpful terminology from a bygone age only serves to confuse the unconscionability issues without serving any constructive purpose. We specifically disapprove of its use as a controlling standard of unconscionability analysis under New Mexico law.

**{32}**   Applying the settled standards of New Mexico unconscionability law, we conclude that World Finance's self-serving arbitration scheme it imposed on its borrowers is so unfairly and unreasonably one-sided that it is substantively unconscionable. In fact, the substantive unconscionability of these one-sided arbitration provisions is so compelling that we need not rely on any finding of procedural unconscionability, any more than have other courts invalidating similar schemes in the cases cited above. It is unnecessary to remand for further fact-finding to assess particular procedural unconscionability factors surrounding the formation of each of these particular contracts, such as the relative bargaining power, sophistication, or wealth of the lender and borrower in this particular case, or in any case of a small loan company's pre-prepared agreement that is as one-sided on its face as the one before us. *See Wis. Auto*, 714 N.W.2d at 169 (observing that even without specifics of the borrower's particular financial situation in the record, it was sufficiently clear that the borrower needed money badly and would have been in a relatively weak bargaining position).

**{33}**   We do not find it necessary to make a formal determination that these were contracts of adhesion, which will not be enforced when the terms are patently unfair to the weaker party, although they certainly appear to have all the characteristics.

> Three elements must be satisfied before an adhesion contract may be found. First, the agreement must occur in the form of a standardized contract prepared or adopted by one party for the acceptance of the other. Second, the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms. Finally, the contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining.

*Guthmann*, 103 N.M. at 509, 709 P.2d at 678 (citations omitted).

**{34}**   Even in the computer-purchase situation in *Fiser*, this Court held it was unnecessary

10

to find contracts of adhesion or to conduct a procedural unconscionability inquiry into the individual circumstances relating to each separate customer before striking down arbitration clauses as substantively unconscionable on their faces. 2008-NMSC-046, ¶ 22. We come to the same conclusion with regard to the patently one-sided nature of the arbitration clauses in this small loan company context. They are so substantively unconscionable that they are unenforceable.

## C.  Preemption Considerations Under the Federal Arbitration Act

**{35}**  World Finance argues that the arbitration agreements at issue are governed by the FAA, which provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While we acknowledge the controlling nature of that principle of law, we disagree that it can save the one-sided arbitration scheme in this case.

**{36}**  We recently held in *Fiser* that the FAA did not preclude our addressing and invalidating an arbitration agreement's class action ban, because our holding was based on neutral and generally applicable New Mexico public policy contract principles. 2008-NMSC-046, ¶ 23. In *Fiser*, a computer manufacturer argued that a purchaser was not permitted to file a class action lawsuit for misrepresentation in the sale of computers, where each similarly situated consumer suffered damages of less than twenty dollars. *Id.* ¶¶ 2-4. We held the class action ban was contrary to New Mexico public policy because "[t]he opportunity for class relief and its importance to consumer rights is enshrined in the fundamental policy of New Mexico and evidenced by our statutory scheme." *Id.* ¶ 13. The arbitration agreement in *Fiser* that banned any form of class action relief was unenforceable because it would have been "tantamount to allowing Defendant to unilaterally exempt itself from New Mexico consumer protection laws." *Id.* ¶ 21. Because the *Fiser* ruling rested on a New Mexico doctrine that existed for the revocation of any contract, the FAA did not preclude our examination of the enforceability of the suspect arbitration clause. *See id.* ¶ 23 ("'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA].'" (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))).

**{37}**  As in *Fiser*, our invalidation of these arbitration agreements is based on a generally applicable New Mexico unconscionability analysis. *See Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable [and does not contravene the FAA] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.").

**{38}**  New Mexico's legal doctrine of contractual unconscionability, like that of other jurisdictions, was not developed to target or invalidate this or any other arbitration agreement. *See id.* ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law."). Our unconscionability

11

analysis, which is applied in the same manner to arbitration clauses as to any other clauses of a contract, is therefore not inconsistent with the dictates of the FAA. The FAA is intended to promote inexpensive, fair, and reasonable arbitration alternatives to litigation. It is not a license for businesses to take advantage of consumers by the imposition of one-sided, unfair, and legally unconscionable arbitration schemes. We will not allow our courts to be used to enforce unconscionable arbitration clauses any more than we will allow them to be used to enforce any other unconscionable contract in New Mexico.

## D. Remedy

**{39}** There are two possible remedial actions we can take to give effect to our holding that the one-sided arbitration provisions separately attached to the loan agreements are unenforceable: We can strike the arbitration provisions in their entirety, or we can attempt to refashion parts of them into a fair and balanced arbitration arrangement. In *Padilla*, we stated:

> If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.

2003-NMSC-011, ¶ 15 (quoting *State ex rel. State Highway & Transp. Dep't v. Garley*, 111 N.M. 383, 389, 806 P.2d 32, 38 (1991)).

**{40}** In *Padilla*, 2003-NMSC-011, ¶¶ 10, 18, this Court struck from a contract an invalid post-arbitration appeal provision but left intact the underlying mutual arbitration clause. By contrast, the invalidity in this case involves the arbitration scheme itself, not just the procedures for appeal to the courts after the arbitration phase is over. We are reluctant to try to draft an arbitration agreement the parties did not agree on. This is particularly so in light of the categorization in the agreements of specific kinds of access to the courts World Finance had insisted on for itself. As we concluded in *Fiser*, 2008-NMSC-046, ¶ 24, we must strike down the arbitration clause in its entirety to avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms for resolving disputes between the parties. As courts in similar situations have found appropriate under these circumstances, we determine that the arbitration agreements are unenforceable in their entirety, and must be severed from the accompanying loan agreements. *See Taylor*, 142 S.W.3d at 287; *Wis. Auto*, 714 N.W.2d at 178.

## IV. CONCLUSION

**{41}** Based on our holding that World Finance's one-sided arbitration clauses are substantively unconscionable and therefore unenforceable under New Mexico law, we affirm the order of the district court denying the motion to compel arbitration, and we remand this

matter to that court for further proceedings consistent with this opinion.

**{42}  IT IS SO ORDERED**.

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

**Topic Index for _Cordova v. World Finance Corp_., No. 30,536**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| **CP** | **CIVIL PROCEDURE** |
| CP-AT | Arbitration |
| CP-EQ | Equitable Claims or Defenses |
| **CM** | **COMMERCIAL LAW** |
| CM-CC | Consumer Credit |
| CM-CP | Consumer Protection |
| CM-UP | Unfair Practices Act |
| CM-UC | Uniform Commercial Code |
| **CN** | **CONTRACTS** |
| CN-AC | Adhesion Contract |

| | |
|---|---|
| CN-CS | Consideration |
| CN-CO | Contracts Against Public Policy |
| CN-PP | Public Policy |
| CN-UC | Unconscionable |

**RE**         **REMEDIES**

| | |
|---|---|
| RE-AN | Arbitration |
| RE-EQ | Equity |