This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**WRONGFUL DEATH ESTATE OF**
**CLIFFORD COOPER, deceased, by**
**the personal representative for the**
**wrongful death estate, MIKE HART,**

Plaintiff-Appellee,

v.                                                                  NO.   31,100

**EVANGELICAL LUTHERAN GOOD**
**SAMARITAN SOCIETY, a North**
**Dakota corporation, d/b/a GRANTS**
**GOOD SAMARITAN CENTER, and**
**MONIQUE DILLON, a New Mexico**
**resident, Director of Nursing,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Harvey Law Firm, LLC
Dusti D. Harvey
Jennifer J. Foote
Albuquerque, NM

Jaramillo Touchet
Maria Touchet
David Jaramillo

Albuquerque, NM

Center for Constitutional Lititgation, P.C.
John Vail, admitted *pro hac vice*
Washington, D.C.

for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Martha G. Brown
Deana M. Bennett
Allison L. Biles
Albuquerque, NM

for Appellants

## MEMORANDUM OPINION

**KENNEDY, Chief Judge.**

{1}     The personal representative of the wrongful death estate of a deceased man sued a nursing home for wrongful death and negligence.  The nursing home moved to compel arbitration based on the Arbitration Agreement (the Agreement) the man's wife had signed when admitting him to the nursing home.  The district court denied the motion to compel arbitration.  We must consider whether the unavailability of the designated arbitrator renders the Agreement unenforceable.  As we conclude that the designation of the arbitrator was integral to the Agreement, its unavailability renders the Agreement unenforceable, and we affirm the denial of the motion.

**I.     BACKGROUND**

{2}     Clifford Cooper fell and broke his hip in 2008, when he was eighty-one years old. After hospitalization, he was released for therapy to Grants Good Samaritan Center (the nursing home), which is owned and operated by Evangelical Lutheran Good Samaritan Society (Evangelical). On June 24, 2008, Cooper's wife, Pacita, took him to the nursing home and signed his admission paperwork. She held a general durable power of attorney for her husband. Included in the admission paperwork was a page labeled "Resolution of Legal Disputes." It stated that any legal disputes would be settled by arbitration and would be governed by the Rules of the National Arbitration Forum (NAF). Pacita signed the bottom of the page in acknowledgment that she received the Resolution and did not check a box to opt out of arbitration.

{3}     Cooper left the nursing home after slightly more than a month. When he left the nursing home, his other hip was broken, and he had several health issues. He required further medical attention until he died the following April. Following Cooper's death, Mike Hart, the personal representative of Cooper's wrongful death estate, brought a claim in February 2010 against Evangelical and its Director of Nursing, Monique Dillon, for wrongful death, negligence, negligence per se, misrepresentation, violation of the unfair trade practices act, and punitive damages. Evangelical moved to compel arbitration pursuant to the Agreement Pacita signed. After briefing from both sides, the district court denied the motion to compel

3

arbitration on the grounds that the arbitration clause does not bind the Wrongful Death Act (the Act) beneficiaries acting through a personal representative. Evangelical appealed.

**{4}** Both parties agree that NAF is not available to arbitrate. After the Minnesota Attorney General filed a lawsuit against NAF based on its ties to consumer loan and debt collection industries, it agreed to cease participating in consumer disputes initiated after July 24, 2009. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 9, 150 N.M. 398, 259 P.3d 803. We requested supplemental briefing from the parties on the issue of whether applying *Rivera* to the NAF issue disposes of the case entirely, therefore, no longer requiring us to address the issues under the Act and whether remand is necessary in order to conduct further discovery.

**II. DISCUSSION**

**{5}** "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. "As contracts, '[w]e consider [arbitration agreements] as a whole to determine how they should be interpreted.'" *Medina v. Holguin*, 2008-NMCA-161, ¶ 8, 145 N.M. 303, 197 P.3d 1085 (alterations in original) (internal quotation marks and citation omitted). "[W]hether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a

4

contractual provision requiring arbitration de novo." *Cordova*, 2009-NMSC-021, ¶ 11 (internal quotation marks and citation omitted).

{6} Hart argues that the Agreement is unenforceable because the designated arbitrator, NAF, is unavailable. Evangelical argues that the designation of NAF and its rules is ancillary at best and allows for the appointment of a substitute arbitrator. The parties argued the implications of NAF's unavailability both below and on appeal. Although the district court did not address NAF's unavailability in its order, "[t]his Court may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to [the] appellant." *Meiboom v. Watson*, 2000-NMSC-004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (alteration in orignial) (internal quotation marks and citation omitted). In their supplemental briefing, both parties apply *Rivera* analysis despite coming to different conclusions. We conclude that the issue of NAF's unavailability is dispositive, and we do not need to address the remaining issues.

{7} The New Mexico Supreme Court's recent decision in *Rivera* provides us with sufficient guidance to resolve the issue before us. *Rivera* also involved an arbitration agreement that designated the now-unavailable NAF as the arbitrator. 2011-NMSC-033, ¶ 1. The Supreme Court established that when the designation of NAF is integral to an arbitration agreement, then NAF's unavailability renders the entire arbitration

5

agreement unenforceable. *Id.* ¶¶ 26-27. The Supreme Court held that "[d]espite the policy favoring enforcement of arbitration agreements, under the [Federal Arbitration Act (FAA),] an arbitration agreement is not enforceable where grounds . . . exist at law or in equity for the revocation of any contract." *Id.* ¶ 17 (third alteration in original) (internal quotation marks and citation omitted). General state law contract defenses may invalidate arbitration agreements. *Id.* Although Section 5 of the FAA allows a court to fill a vacancy if there is a lapse in naming an arbitrator, in *Rivera*, our Supreme Court stated that Section 5 "cannot be used to circumvent the parties' intent to arbitrate before that specific forum" when designation of a particular arbitrator was integral to the agreement. *Id.* ¶ 24.

{8}     The Supreme Court concluded that "whether . . . NAF is integral to the parties' agreement to arbitrate is a matter of contract interpretation," *id.* ¶ 27, and adopted a test to determine whether the designation of NAF was integral to the agreement or merely an "ancillary logistical concern[.]" *Id.* ¶ 24 (internal quotation marks and citation omitted). The Supreme Court held that the designation of NAF was integral to the agreement because the agreement expressly designated a single arbitration provider, designated a single set of rules, used mandatory language, and referenced NAF pervasively throughout the agreement. *Id.* ¶¶ 30, 33, 38. Because the designation of NAF was integral and NAF was unavailable, the Supreme Court

6

determined that a court may not "select and impose on the contracting parties a substitute arbitrator inconsistent with the plain terms of their contract." *Id.* ¶ 38. The Supreme Court declined to enforce the arbitration agreement.

**{9}** Here, the Agreement is similar, but not identical to the one in *Rivera*. In *Rivera*, the parties explicitly designated that any arbitration shall be conducted pursuant to NAF rules and procedures. *Id.* ¶ 38. The first rule of the NAF Code states: "This Code shall be administered only by the [NAF] or by any entity or individual providing administrative services by agreement with the [NAF]." National Arbitration Forum, *Code of Procedure*, Rule 1(A) (Aug. 1, 2008). In *Rivera*, our Supreme Court questioned whether a substitute arbitrator could even use the NAF rules, and if the NAF rules exist in the absence of NAF. 2011-NMSC-033, ¶ 35. In *Rivera*, we have been provided with no information about whether a substitute arbitrator is available under the first rule of NAF. The express designation of the rules of NAF weighs in favor of NAF being integral to the agreement.

**{10}** Here, the Agreement uses mandatory language to refer to NAF as in the *Rivera* agreement. In the present case, the Agreement states that the arbitration "shall" be conducted in accordance with the NAF rules. It further states that "any person requesting arbitration *will* be required to pay a filing fee to NAF and other expenses[.]" (Emphasis added.) The use of mandatory language strengthens the

comparison with the agreement in *Rivera* in favor of the arbitration clause being integral. The instruction that anyone who wishes to arbitrate "will" pay a filing fee to NAF also supports a reading that the agreement exclusively designates NAF as arbitrator.

{11} In stating that the NAF rules shall be used and that a filing fee will be paid to NAF, the Agreement includes NAF's contact information via phone, postal mail, or website. This information is provided if the consumer signing the agreement "would like information regarding NAF's arbitration service and its rules and procedures for arbitration[.]" While NAF appears to be referenced fewer times than in *Rivera*, we determine that NAF is still referenced pervasively throughout the Agreement.

{12} Although the arbitration clause did not expressly designate NAF as the arbitrator, the designation of NAF rules, which include NAF's control over the appointment of an arbitrator, the use of mandatory language, and several references to NAF indicate that designation of NAF is integral to the arbitration clause. We also note the absence of reference to any other arbitrator or alternative methods of appointing one.

{13} Evangelical argues that the question of NAF's importance to the contract should be remanded for limited discovery in a lower court because *Rivera* was not decided until after briefing was complete in the district court. Interpretation of a contract for

8

arbitration, including the issue of whether the parties agreed to arbitrate, is a matter of law that we review de novo. *Cordova*, 2009-NMSC-021, ¶ 11. Evangelical did not point us to factual issues that require discovery. In response to our request for clarification on what issues needed discovery, Evangelical merely stated that it needed discovery about the "permissive nature of the NAF Code" and whether the delegation provision is valid. We do not agree that those are issues requiring remand rather than legal issues of whether the parties agreed to arbitrate. No discovery is necessary in order to determine whether designation of NAF is integral.

## III. CONCLUSION

{14}     We conclude that the designation of NAF is integral to the parties' agreement to arbitrate and that its unavailability therefore renders the entire Agreement unenforceable. We affirm the district court's denial of Evangelical's motion to compel arbitration.

{15} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**MICHAEL E. VIGIL, Judge**