This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MICHAEL A. POOL and**
**MICHELLE POOL,**

Plaintiffs-Appellees,

v.                                                    **NO. 33,894**

**DRIVETIME CAR SALES COMPANY, LLC,**
**d/b/a DRIVETIME, and JEREMY MENDOZA,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Treinen Law Office PC
Rob Treinen
Albuquerque, NM

Public Justice PC
Jennifer Dale Bennett
Oakland, CA

for Appellees

Quintairos, Prieto, Wood & Boyer, P.A.
Frank Alvarez

Christina Gratke Nason
Dallas, TX

Ballard Spahr LLP
Mark J. Levin
Philadelphia, PA

for Appellants

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     Plaintiffs Michael A. and Michelle Pool purchased a used vehicle from Defendants DriveTime Car Sales Company (DriveTime) and its employee Jeremy Mendoza. The sales contract between the parties contained an arbitration agreement that allowed either party to refer a wide array of claims arising from the transaction to binding arbitration. At trial, the district court found the arbitration agreement to be substantively unconscionable and unenforceable under New Mexico law. On appeal, Defendants argue that (1) the arbitration agreement is not substantively unconscionable under New Mexico law and (2) the district court's order is preempted by the Federal Arbitration Act (FAA). We hold that the terms of the arbitration agreement result in one-sided carve-out provisions for self-help and small claims remedies that have previously been declared to be substantively unconscionable by

this Court. Because the agreement is substantively unconscionable under New Mexico law, the district court's order is not preempted by the FAA. We affirm.

**BACKGROUND**

{2}     In the summer of 2013, Plaintiffs were shopping for a used vehicle for their son. During that process they visited DriveTime's Albuquerque, New Mexico location and were assisted by a salesperson named Jeremy Mendoza. Mendoza allegedly informed Plaintiffs that the 2005 Dodge Durango being considered by Plaintiffs had never been in an accident and provided an AutoCheck report indicating the same. On July 1, 2013, Plaintiffs entered into a simple interest retail installment contract with Defendants for the purchase of the vehicle. The contract was presented to Plaintiffs in two parts. The first part, entitled "Simple Interest Retail Installment Contract," included the financial terms of the sale and additional language governing the purchase of the vehicle. The second part, entitled "Arbitration Agreement," included terms under which Plaintiffs waived the right to a civil trial under certain circumstances. The arbitration agreement was expressly incorporated into the contract and vice versa.

{3}     The arbitration agreement itself contains a clause that states, in relevant part,

3

Unless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by **BINDING ARBITRATION**.

If you or we elect arbitration, you will be **GIVING UP YOUR RIGHT TO GO TO COURT** to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court).

Your rights will be determined by a **NEUTRAL ARBITRATOR** AND **NOT** by a **JUDGE OR JURY**.

The arbitration agreement goes on to provide that a "[c]laim may be arbitrated instead of litigated in court" and to define "claim" as,

any claim, dispute or controversy between you and us arising from or related to one or more of the following:

(a)     The Contract.
(b)     The vehicle or the sale of the vehicle.
(c)     The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
(d)     The relationships resulting from the Contract.
(e)     Advertisements, promotions or oral or written statements related to the Contract.
(f)     The financing terms.
(g)     Your credit application.
(h)     The origination and servicing of the Contract.
(i)     The collection of amounts you owe us.
(j)     Any repossession, or replevin, of the vehicle.
(k)     Your personal information[.]
(l)     The rescission or termination of the Contract.

Despite these broad pronouncements, the arbitration agreement then exempts certain "claims" from arbitration, stating,

4

[N]otwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

The arbitration agreement additionally provides that (1) the consumer may choose either JAMS or the American Arbitration Association (AAA) to administer any arbitration between the parties, (2) conflicts between the arbitration agreement and the arbitration administrator's rules will be governed by the agreement, and (3) the FAA governs the arbitration agreement.

{4}     On December 11, 2013, Plaintiffs filed this lawsuit against Defendants for fraud and violations of the New Mexico Unfair Practices Act based upon allegations that Defendants knowingly misrepresented the vehicle history and omitted information related to a previous accident and repairs. The complaint also requested relief in the form of a declaratory judgment, holding that the arbitration agreement was unenforceable as a matter of New Mexico law.

{5}     In addition to their answer, Defendants filed a motion to compel arbitration as provided in the contract. Following a hearing on May 8, 2014, the district court denied

5

the motion based upon a finding that the arbitration scheme is substantively unconscionable as a matter of law. This appeal resulted.

**STANDARD OF REVIEW**

{6}     Our appellate courts apply de novo review to both the denial of a motion to compel arbitration and the issue of unconscionability of a contract. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. We also review statutory interpretation, including interpretation of the FAA, de novo. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 25, 304 P.3d 409.

**APPLICATION OF THE DOCTRINE OF UNCONSCIONABILITY TO ARBITRATION AGREEMENTS IN NEW MEXICO**

{7}     As recently as December 2014, this Court spoke to the specific application of the doctrine of unconscionability to arbitration agreements contained within used automobile sales and financing contracts. *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶¶ 2-3, 345 P.3d 1086, *cert. granted*, 2015-NMCERT-003, 346 P.3d 1163. While the instant case presents different contractual language, we are guided by this Court's application of the doctrine of unconscionability to the arbitration agreement at issue in *Dalton*.

**Unconscionability Analysis in *Dalton***

**{8}**     In New Mexico, unfairly one-sided carve-out provisions in arbitration agreements are substantively unconscionable. *Id.* ¶ 7; *see Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 46, 150 N.M. 398, 259 P.3d 803 ("Contract provisions that unreasonably benefit one party over another are substantively unconscionable." (internal quotation marks and citation omitted)). In *Dalton*, this Court applied this general rule, holding that the arbitration agreement at issue was substantively unconscionable when "the practical effect of the carve-out provisions is to mandate arbitration of [the p]laintiff's most important and most likely claims while exempting from arbitration [the d]efendant's most important judicial and non-judicial remedies." 2015-NMCA-030, ¶ 2.

**{9}**     The contractual language invoking this analysis in *Dalton* expressly allowed both parties to have claims within the jurisdiction of small claims court heard in that forum, a facially bilateral exclusion. *Id.* ¶ 3 ("You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction[.]" (internal quotation marks and citation omitted)). However, when combined with the arbitration agreement's carve-out for self-help repossession, the practical effect of the small claims exclusion was to exempt from arbitration the most likely lender claims, including judicial foreclosure, award of deficiency judgments,

and wage garnishment, while subjecting the most likely consumer claims, including fraud, misrepresentation, and violations of consumer protection statutes, to arbitration. *Id.* ¶¶ 16-18.

**Application of the *Dalton* Unconscionability Analysis**

{10}    The language of the arbitration agreement in the instant case varies from that in *Dalton* in two distinct ways. We review these distinctions in turn.

**A.    The Self-Help and Small Claims Exclusions**

{11}    As in *Dalton*, the arbitration agreement at issue in the present case excludes self-help remedies, including repossession and sale of the vehicle, from the set of claims subject to arbitration. *Id.* ¶ 3. Unlike in *Dalton*, the arbitration agreement at issue in the present case does not expressly reserve access to small claims court for both parties. Instead, the language of the arbitration agreement states, "we will not require arbitration of any individual [c]laim *you* make in small claims court[.]" (Emphasis added.) This language appears facially neutral or even, as argued by Defendants, appears to favor Plaintiff in this case.

{12}    However, our case law requires that we look beyond just the contractual language and seek, instead, the practical effect of the arbitration agreement. *See Rivera*, 2011-NMSC-033, ¶ 45 ("Substantive unconscionability concerns the legality

8

and fairness of the contract terms themselves, and the analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, *the purpose and effect of the terms*, the one-sidedness of the terms, and other similar public policy concerns." (emphasis added) (internal quotation marks and citation omitted)).

{13}     Since the arbitration agreement only expressly carves out access to small claims court for the consumer, DriveTime's claims—even those within the jurisdiction of a small claims court—are "claims" subject to arbitration under the arbitration agreement. In fact, in their appellate briefing, Defendants stated that the small claims carve-out "benefits Plaintiffs exclusively, since DriveTime has essentially waived its own right . . . to bring claims against Plaintiffs in small claims court."

{14}     For various reasons, we are unpersuaded that DriveTime's small claims must be arbitrated. First, when we read the contract as a whole, other language creates confusion as to whether DriveTime must bring its small claims in arbitration. *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 28, 123 N.M. 526, 943 P.2d 560 ("In interpreting a contract, the court must consider the contract as a whole and give significance to each part."). The arbitration agreement provides that the consumer must choose either JAMS or  AAA as the arbitration administrator. Consumer arbitrations conducted by JAMS and AAA are subject to internal rules and protocol

determined by each company. *See* JAMS, *JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness* (July 15, 2009), http://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Consumer_Min_Stds-2009.pdf (*JAMS Consumer Arbitration Rules*); American Arbitration Association, *Consumer Arbitration Rules* (Sept. 1, 2014), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTAGE2021425&revision=latestreleased (*AAA Consumer Arbitration Rules*). Both the JAMS and AAA consumer arbitration rules state that reciprocity of access to small claims court is a necessary condition for either entity to administer consumer arbitration. *See JAMS Consumer Arbitration Rules*, *supra*, at 2; *AAA Consumer Arbitration Rules*, *supra*, at 15. Defendants argue that in the case of "conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs." However, both JAMS and AAA require that amendments to their rules must be in writing and submitted by both parties. *See* JAMS, *JAMS Streamlined Arbitration Rules & Procedures*, *supra*, at 6 (July 1, 2014), http://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_streamlined_arbitration_rules-2014.pdf; *AAA Consumer Arbitration Rules, supra*, at 10. No

10

indication exists that Plaintiffs would acquiesce to amend the consumer arbitration rules under the circumstances. Without such an amendment, it appears that JAMS and AAA would be unavailable to arbitrate. While the arbitration agreement contemplates the unavailability of both JAMS and AAA by empowering a court to choose a substitute administrator, it is unclear that any arbitration entity would serve as an administrator absent a term requiring reciprocal access to small claims court. This issue has not been briefed, and we assume that DriveTime would rather accept the default rules than have this Court undertake to determine whether JAMS and AAA constitute integral, but unavailable, providers under the circumstances. *See Rivera*, 2011-NMSC-033, ¶ 56 (holding that courts will not undertake a "wholesale revision of the arbitration clause" for the purpose of replacing an integral but unavailable designated arbitrator (internal quotation marks and citation omitted)); *id.* ¶ 28 (citing *QuickClick Loans, LLC v. Russell*, 943 N.E.2d 166, 174 (Ill. App. Ct. 2011), which held "unenforceable an arbitration agreement that specified arbitration before one of two arbitration providers, both of which were unavailable").

{15}     Second, both the arbitration agreement itself and Defendants' commentary during oral argument before this Court acknowledge a crucial truth: an arbitration agreement does not prevent a plaintiff from filing the plaintiff's claims in a forum of the plaintiff's choosing. *See Daniels Ins. Agency, Inc. v. Jordan*, 1982-NMSC-148,

11

¶ 5, 99 N.M. 297, 657 P.2d 624 ("A valid arbitration defense does not divest the court of jurisdiction[.]"). Instead, an arbitration agreement empowers a defendant to compel a plaintiff to abandon the plaintiff's preferred forum in favor of arbitration. This distinction was clarified during oral argument before this Court.

| | |
|---|---|
| Defendants' Attorney: | If DriveTime sues in small claims court [Plaintiffs] can move to compel arbitration. So, DriveTime is not[.] |
| The Court: | Now would DriveTime sue in small claims court? |
| Defendants' Attorney: | Well, if it did. If it did. |
| The Court: | Let me ask you this question . . . suppose DriveTime has a deficiency that's under $10,000. What's the process[?] |
| . . . . | |
| Defendants' Attorney: | If there's a deficiency judgment, if it went to court, I'm not saying they can't go to court, but if they did go to court . . . to small claims court, . . . Plaintiffs could compel arbitration. |
| The Court: | If who went to small claims court? Ok, so if DriveTime filed in small claims court? |
| Defendants' Attorney: | Yes[.] |

These comments contradict Defendants' briefing to this Court, which implies that DriveTime's small claims are subject to arbitration and may not be brought in small claims court. That DriveTime does in fact retain its right to bring claims in small

claims court is not a meaningless distinction with respect to the practical effect of the arbitration agreement.

**{16}** As in *Dalton*, the practical effect of the arbitration agreement at issue is to exempt Defendants from arbitration for their most likely claims, while providing Defendants the option to compel arbitration for Plaintiffs' most likely claims. 2015-NMCA-030, ¶¶ 16-18; *see also Cordova*, 2009-NMSC-021, ¶ 26 (stating that cases of default are the most likely reason that lenders take legal action against their borrowers). The arbitration agreement exempts statutory self-help remedies, including repossession and commercially reasonable sale of the vehicle. *See* NMSA 1978, § 55-9-609 (2001); NMSA 1978, § 55-9-610(a) (2001). After sale, DriveTime can seek a judgment in magistrate court for any deficiency, up to $10,000, between the contract price of the vehicle and the amount recovered at sale. *See* NMSA 1978, § 35-3-3(A) (2001). If self-help repossession is impracticable or impossible under the circumstances, DriveTime can, at the point when the market value of the vehicle falls below $10,000, file for judicial foreclosure or replevin of the vehicle in magistrate court. *See* NMSA 1978, § 35-11-1 (1975).

**{17}** Plaintiffs, under the arbitration agreement at issue, may compel arbitration of any of these small claims brought by DriveTime. That right would not, however, have the practical effect of DriveTime actually being required to arbitrate its small claims.

13

**{18}** A cost-benefit analysis shows that Plaintiffs would gain nothing by compelling arbitration of DriveTime's most likely claims against them. The purpose of arbitration is to promote judicial efficiency and to conserve the resources of the parties involved. *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 6, 288 P.3d 888. These purposes are achieved, largely, by limiting both discovery and the application of the Rules of Civil Procedure. *See United Nuclear Corp. v. Gen. Atomic Co.*, 1979-NMSC-036, ¶ 48, 93 N.M. 105, 597 P.2d 290 ("In most cases, discovery in arbitration is limited to the discovery available under the Arbitration Act itself."); *see also Medina v. Found. Reserve Ins. Co.*, 1997-NMSC-027, ¶ 10, 123 N.M. 380, 940 P.2d 1175 ("Arbitration is a special statutory proceeding which requires application of procedural rules that may conflict with the more general [R]ules of [C]ivil [P]rocedure in order to accomplish the purpose behind the Act."). With respect to any claims DriveTime would bring against Plaintiffs in small claims court, the savings in time and money realized by Plaintiffs as a result of compelling arbitration would be minimal. There is simply a limited need for discovery in defending against a claim for a deficiency judgment. However, from a cost perspective, a decision by Plaintiffs to compel arbitration would make Plaintiffs responsible for payment of the arbitration filing fee, whereas remaining in small claims court as a defendant costs Plaintiffs nothing. *Compare* NMSA 1978, § 35-6-1(B) (2011) (providing that no costs or fees

14

are paid by civil defendants), *with AAA Consumer Arbitration Rules*, *supra*, at 33 (requiring a $200 filing fee), and *JAMS Consumer Arbitration Rules*, *supra*, at 2 (requiring a $250 filing fee). Any assertion by Defendants that Plaintiffs would be likely to compel arbitration of small claims against them stretches credulity.[1]

{19}   Because no legitimate reason exists for Plaintiffs to compel arbitration of small claims against them, the practical effect of the self-help and small claims exclusions in the arbitration agreement at issue are precisely the same as in *Dalton*, despite differences in the contractual language.

**B.     The Injunctive Relief Exclusion**

{20}   The second distinguishing characteristic between the arbitration agreements in this case and in *Dalton* is the presence of an additional opportunity for each party to seek injunctive relief with respect to self-help remedies. Since only consumers would avail themselves of this right, its presence weighs, to a degree, against a finding that

---

[1]The Consumer Financial Protection Bureau's Arbitration Study Report to Congress outlines the disparity between the initiation of pre-arbitration dispute resolution in small claims courts by lenders and consumers in the context of credit card account disputes. While not directly analogous, the report indicates that, in New Mexico, less than one half of one percent of small claims suits are initiated by consumers. Consumer Financial Protection Bureau, *Arbitration Study*, § 7, *supra*, at 11; App. E, *supra*, at 156 (March 2015), http://files.consumerfinance.gov/f/201503_cfpb_arbitration-study-report-to-congress-2015.pdf (revealing that, in 2012, 421 of 423 small claims between credit card issuers and consumers were filed by the issuers).

the arbitration agreement is unconscionably one-sided. However, after consideration of the practical effects of this provision, we observe that it provides only limited protection to consumers in the context of used automobile sales and finance contracts.

{21} With respect to a consumer's ability to enjoin the sale of a repossessed vehicle, "[i]njunctions are harsh and drastic remedies that should issue only in extreme cases of pressing necessity and only where there is a showing of irreparable injury[.]" *Leonard v. Payday Prof'l/Bio-Cal Comp.*, 2008-NMCA-034, ¶ 14, 143 N.M. 637, 179 P.3d 1245 (alterations, internal quotation marks, and citation omitted). While injunctive relief is contemplated in Article 9 of the Uniform Commercial Code (UCC), such relief would only be available in instances in which a secured creditor has repossessed a vehicle in violation of the UCC. *See* NMSA 1978, § 55-9-625(a) (2001) ("If it is established that a secured party is not proceeding in accordance with Chapter 55, Article 9 NMSA 1978, a court may order or restrain collection, enforcement or disposition of collateral on appropriate terms and conditions."). We trust that it would be the rare consumer who would obtain injunctive relief to prevent the resale of a vehicle repossessed in violation of New Mexico law.

{22} The same rationale applies to a consumer's ability to enjoin repossession of a vehicle by a secured creditor. First, injunctive relief prior to repossession is an unlikely option for a defaulted consumer given that repossession by a secured creditor

requires no notice. *See* § 55-9-609(a)(1), (b)(2) ("After default, a secured party . . . may take possession of the collateral . . . without judicial process, if it proceeds without breach of the peace."). But additionally, and more importantly, a grant of injunctive relief in this context would imply that the creditor has violated Section 55-9-609 by attempting to take possession prior to default. We decline to conclude that a consumer is significantly benefitted by contract provisions that provide access to judicial relief largely in order to prevent or remedy the wrongful acts of the other party.[2]

{23}     Finally, a question arises as to whether consumers should or would avail themselves of injunctive relief in the case of wrongful repossession and/or sale given the inability under the contract to bring claims for damages associated with the wrongful act. The arbitration agreement provides the option for injunctive relief but prohibits "a request for damages or monetary relief of any kind." A wrongful repossession or sale of Plaintiffs' vehicle would subject DriveTime to civil liability. *See Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 22, 289 P.3d 1255 (defining the tort of conversion as "the unlawful exercise of dominion and control over personal

---

[2]In their brief in chief, Defendants argue that "if [we] attempt[] to repossess or sell the loan collateral through self-help, Plaintiffs can go to court to try to prevent [us] from repossessing or selling the collateral." Success in this endeavor by Plaintiffs implies that the vehicle was to be improperly repossessed or sold.

17

property belonging to another in exclusion or defiance of the owner's rights" (internal quotation marks and citation omitted)). However, our case law makes clear that if Plaintiffs successfully enjoined a wrongful repossession or sale of their vehicle, they would forgo any claim for damages arising from the same transaction. *See Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 29, 98 N.M. 690, 652 P.2d 240 (holding that, under the doctrine of res judicata, a judgment granting or denying equitable relief precludes a subsequent claim for damages at law arising from the same transaction), *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, 105 N.M. 57, 728 P.2d 467. We decline to conclude that consumers are significantly benefitted by contract provisions that, when enforced, result in those consumers forgoing the opportunity to brings claims for damages at law.

**The Practical Effect of the Exclusions**

{24}     When the practical effect of an ostensibly bilateral exemption clause is to unreasonably favor one party over the other, that clause cannot stand. *See Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶¶ 33-35, 306 P.3d 480 (invalidating a clause that exempted guardianship proceedings, collections proceedings, and eviction actions); *Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶¶ 10-18, 293 P.3d 902 (invalidating a clause that exempted collections proceedings and discharge actions). Despite adding provisions that

nominally favor consumers to this arbitration agreement, the practical effect mandates arbitration of Plaintiff's "most important and most likely claims while exempting from arbitration" Defendant's "most important judicial and non-judicial remedies." *Dalton*, 2015-NMCA-030, ¶ 2. As a result, the arbitration agreement is impermissibly one-sided and substantively unconscionable as a matter of New Mexico law.

**PREEMPTION AND SEVERABILITY**

{25} "[O]ur Supreme Court has consistently upheld the application of our generally applicable unconscionability doctrine to one-sided arbitration agreements." *Id.* ¶ 29; *see Strausberg*, 2013-NMSC-032, ¶ 49 ("[A] court may, consistent with the FAA . . . invalidate an arbitration agreement through the application of an existing common law contract defense such as unconscionability."). Because our Supreme Court has specifically rejected the argument that application of the doctrine of unconscionability to "a carve-out exempting Article 9 rights is somehow inconsistent with the FAA[,]" FAA preemption is inapplicable in this case. *Dalton*, 2015-NMCA-030, ¶ 30 (citing *Rivera*, 2011-NMSC-033, ¶¶ 50-52). "[T]he exemptions of certain claims from arbitration are so central to the agreement that they are incapable of separation from the agreement to arbitrate[.]" *Figueroa*, 2013-NMCA-077, ¶ 39. As such, the only appropriate action by this Court under the circumstances is to strike the arbitration clause from the contract in its entirety.

19

# CONCLUSION

{26}     In their briefing, Plaintiffs raised additional potentially meritorious objections to the substance of the arbitration agreement. These objections relate to the inclusion of clauses limiting damages available in arbitration and mandating confidentiality with respect to the outcome of any arbitration. Because our holding is supported by existing appellate case law, we refrain from deciding those issues pending the outcome of *Dalton* on certiorari to our Supreme Court. Affirmed.

{27}     **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**LINDA M. VANZI, Judge**