GALLEGOS, Judge.
{1} Defendant Ernest Serna was arrested and charged with an open count of murder (firearm enhancement), contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), and NMSA 1978, Section 31-18-16 (1993) ; tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003) ; and aggravated stalking, contrary to NMSA 1978, Section 30-3A-3.1 (1997). While he was in police custody, Defendant made several potentially incriminating statements to the arresting deputy. In district court, Defendant filed a motion to suppress the statements, arguing that he was not adequately apprised of his rights under Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court found that the Miranda warnings were adequate and denied Defendant's motion. Subsequently, Defendant entered into a conditional plea and disposition agreement (plea agreement) in which he pled no contest to second degree murder (firearm enhancement), contrary to Section 30-2-1(B) and Section 31-18-16, tampering with evidence, and aggravated stalking. In the plea agreement, Defendant specifically reserved for appeal the issue of the adequacy of the Miranda warnings. For the reasons that follow, we conclude that the Miranda warnings given to Defendant by the arresting deputy did not sufficiently convey Defendant's full rights under Miranda . We therefore reverse the district court's order denying Defendant's suppression motion.
BACKGROUND
{2} The State alleges that Defendant and Alicia Quintana (Victim) went to a restaurant together and subsequently engaged in a verbal altercation in the restaurant's parking lot. After the verbal altercation, Defendant and Victim returned to the restaurant to pay their bill and then left the establishment. Several minutes later, gunshots were heard and a pickup truck was seen quickly fleeing the parking lot. Victim was found bleeding in the parking lot and was later pronounced dead.
{3} Defendant was apprehended a few days later by Sandoval County Deputy Sheriff Sal Tortorici. Defendant was placed in the back of Deputy Tortorici's patrol vehicle and the two engaged in casual conversation for several minutes while Deputy Tortorici had his lapel camera turned on. The lapel video shows that after approximately six and a half minutes, Deputy Tortorici recited Defendant's Miranda rights from memory and without the use of a department-issued card. Specifically, Deputy Tortorici gave Defendant the following Miranda warning (first Miranda warning):
You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney during any and all questionings. If you can't afford an attorney, one will be provided for you.
Deputy Tortorici did not immediately begin to question Defendant about the crime. Rather, Defendant and Deputy Tortorici continued to engage in conversation during which time Defendant made several statements *1286 about contemplating turning himself in to law enforcement. Deputy Tortorici then asked Defendant about the weapon, presumably the one allegedly used in the killing of Victim. Defendant responded by stating that he did not know what he did with the weapon and that he threw it out of his vehicle "somewhere."
{4} Deputy Tortorici proceeded to drive Defendant to the police station for further questioning. According to an additional video recorded by Deputy Tortorici's lapel camera, Defendant was read the following Miranda warning (second Miranda warning) from a department-issued card:
You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and you have the right to have him present with you while being questioned. If you cannot afford a lawyer, one will be appointed to you before any questionings. If you decide at any time you want to exercise these rights and not answer any questions, you may do so.
Deputy Tortorici then began to interrogate Defendant about what had happened outside the restaurant with Victim. Defendant immediately asked if he was being recorded and what it would take to get an attorney. Defendant expressed that he was previously unaware he could have an attorney and that he may not have been listening to the first Miranda warning. Defendant then stated he "want[ed] to be left alone." After Defendant and Deputy Tortorici engaged in a bit more conversation, in which Defendant either refused to answer or gave ambiguous responses to Deputy Tortorici's questions, the lapel video ends.
{5} Defendant was charged with an open count of murder (firearm enhancement), tampering with evidence, and aggravated stalking. Subsequently, on August 17, 2015, Defendant filed a motion to suppress the statements made to Deputy Tortorici, arguing exclusively that the first Miranda warning given by Deputy Tortorici was inadequate. At the suppression hearing, the parties stipulated to the language used by Deputy Tortorici in the first Miranda warning. The district court denied the motion to suppress and found the first Miranda warning adequate. Notwithstanding the fact that the adequacy of the Miranda warning was the only issue addressed in Defendant's motion and during the suppression hearing, the district court also found that Defendant had waived his rights under Miranda . In response to the district court's order, Defendant filed a motion in limine seeking an additional order on the waiver issue. The district court then issued a letter requesting supplemental briefing as to whether Defendant waived his Miranda rights. The waiver issue was briefed by both sides and a second hearing was scheduled. At the hearing, a copy of the lapel videos was given to the district court and admitted into evidence[1] .
{6} The district court never entered an additional or amended order on the waiver issue. Instead, shortly after the second hearing, Defendant entered into a plea agreement in which he pled no contest to second degree murder (firearm enhancement), tampering with evidence, and aggravated stalking. The plea agreement stated that "Defendant may appeal only the issue of whether the arresting [s]heriff's [d]eputy gave an insufficient Miranda warning to ... Defendant as raised in ... Defendant's brief filed August 17, 2015." The district court's judgment and sentence order similarly stated that "Defendant may appeal the Miranda warning issue as raised in briefs filed 8/17/15."
DISCUSSION
{7} On appeal, Defendant makes two arguments stemming from the district court's denial of his suppression motion. First, Defendant argues that the first Miranda warning given to him was inadequate. Specifically, Defendant asserts that the warning did not adequately convey his right to have counsel appointed and present prior to questioning. Second, Defendant argues that even if the *1287 warning was adequate, the district court erred in finding that he waived his rights under Miranda .
{8} In turn, the State contends that the warning was adequate and that the waiver issue was not preserved below or reserved for appeal in the plea agreement. Additionally, the State argues for the first time on appeal that some of the statements made by Defendant to Deputy Tortorici were volunteered.
I. Standard of Review
{9} In reviewing the district court's denial of a defendant's motion to suppress, the factual determinations are subject to a substantial evidence standard of review, but the application of the law to the facts is subject to de novo review. State v. Nieto , 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442. We view the district court's factual determinations "in the manner most favorable to the prevailing party." State v. Lopez , 2000-NMCA-069, ¶ 4, 129 N.M. 352, 8 P.3d 154.
II. Adequacy of the Miranda Warnings
{10} At issue here is the Fifth Amendment right against self-incrimination. The Fifth Amendment states that no person shall "be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Fifth Amendment right against self-incrimination is applicable to the State of New Mexico through the Fourteenth Amendment. See State v. Filemon V. , 2018-NMSC-011, ¶ 18, 412 P.3d 1089.
{11} This privilege against self-incrimination is available outside of court proceedings, including situations where a person is being questioned by law enforcement. See Miranda , 384 U.S. at 467, 86 S.Ct. 1602 (holding that the Fifth Amendment privilege is available during in-custody interrogation of persons suspected or accused of a crime). A person is subject to custodial interrogation when law enforcement initiates questioning after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Id . at 444, 86 S.Ct. 1602.
{12} "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. In order for a statement to be admissible, Miranda requires that prior to questioning, law enforcement must warn the person of the right to remain silent, that any statement he or she makes may be used as evidence against them, and that he or she "has a right to the presence of an attorney, either retained or appointed." Id. These warnings must be clearly conveyed to the individual held for interrogation and are an absolute prerequisite before the interrogation can begin. Id. at 471-72, 86 S.Ct. 1602. "Only through such a warning is there ascertainable assurance that the accused was aware of" his or her Miranda rights. Id . at 472, 86 S.Ct. 1602.
{13} Our focus in this case is on Deputy Tortorici's explication of Defendant's right to counsel. The right to counsel warning from Miranda requires that a person subject to custodial interrogation by law enforcement be apprised that they have a "right to the presence of an attorney[.]" Id. at 444, 86 S.Ct. 1602. In this case, Deputy Tortorici warned Defendant that he had a "right to an attorney during any and all questionings." Deputy Tortorici also warned Defendant, "If you can't afford an attorney, one will be provided for you." Defendant argues that Deputy Tortorici's warnings were inadequate because they did not apprise him of his right to appointed counsel prior to questioning. In response, the State contends that there is no requirement that a Miranda warning explicitly inform the suspect of a right to an attorney prior to questioning. Further, the State asserts that Defendant was in fact informed of the right to have an attorney prior to answering questions, and that this is all that is required under Miranda .
{14} To the extent the State asserts that there is no requirement that a suspect be given the Miranda warnings verbatim, we agree. See *1288 California v. Prysock , 453 U.S. 355, 359-60, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (stating that Miranda does not require a "talismanic incantation" of the warnings, but rather only the fully effective equivalent of such warnings). "The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights." Coyote v. United States , 380 F.2d 305, 308 (10th Cir. 1967). "[I]t is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning." Id .
{15} In making this determination, the form of a Miranda warning is of little consequence as we look to see if the substance of what is required by Miranda is communicated to the suspect. See Prysock , 453 U.S. at 359, 101 S.Ct. 2806 ("[The United States Supreme] Court has never indicated that the 'rigidity' of Miranda extends to the precise formulation of the warnings given a criminal defendant."); State v. Briggs , 1970-NMCA-062, ¶ 4, 81 N.M. 581, 469 P.2d 730 ("The warnings required by Miranda ... deal with substance, not form."); see also People of Territory of Guam v. Snaer , 758 F.2d 1341, 1343 (9th Cir. 1985) ("If a defendant has been told the substance of his constitutional rights, it is not fatal if irrelevant words or words with no independent substance are omitted." (internal quotation marks and citation omitted) ). Miranda warnings need not be examined "as if construing a will or defining the terms of an easement." Duckworth v. Eagan , 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989).
{16} "The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by Miranda ." Duckworth, 492 U.S. at 203, 109 S.Ct. 2875 (alterations, internal quotation marks, and citation omitted). In taking this somewhat flexible and common sense approach, the United States Supreme Court has attempted to balance the individual right against compelled self-incrimination with the necessities encountered every day by law enforcement. See Miranda , 384 U.S. at 481, 86 S.Ct. 1602 ("This Court, while protecting individual rights, has always given ample latitude to law enforcement agencies in the legitimate exercise of their duties.").
{17} Our analysis of the adequacy of Deputy Tortorici's Miranda warnings thus turns on two primary questions: (1) does Miranda require that a person subject to custodial interrogation be warned of that person's right to have counsel present prior to questioning; and (2) if so, was this right reasonably conveyed by the warnings given by Deputy Tortorici?
A. Miranda Warnings Must Convey the Right to the Presence of Counsel Prior to Questioning
{18} It is clear from both Miranda and subsequent decisions by the United States Supreme Court that there is a right to have and consult with counsel prior to questioning. See Miranda , 384 U.S. at 470, 86 S.Ct. 1602 ("Thus, the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires."); see also Duckworth , 492 U.S. at 203, 109 S.Ct. 2875 (noting that the warnings at issue, including the defendant's right to speak to an attorney before and during questioning satisfied all the requirements of Miranda ); Florida v. Powell , 559 U.S. 50, 62, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010) (holding that, combined together, the warnings given to the defendant "reasonably conveyed" that he had a right to have an attorney present "at all times[,]" including both prior to and during police questioning). This right must be conveyed as part of the Miranda warnings. See Prysock , 453 U.S. at 361, 101 S.Ct. 2806 (stating that the full right to counsel under Miranda that must be conveyed includes the "right to have a lawyer present prior to and during interrogation").
{19} We address the State's two points of disagreement with this proposition. The State's first point is that this Court, our Supreme Court, and the United States Supreme Court have all upheld on numerous occasions warnings that simply apprised the suspect of a right to the presence of counsel, *1289 which is a verbatim recitation of what Miranda noted was required. See Miranda , 384 U.S. at 444, 86 S.Ct. 1602. While this may be true, such a warning contains no limitation on the right to counsel. That is, one can reasonably infer from an advisement referring to the right to the presence of counsel that the right applies both before and during interrogation. The fact that courts have affirmed the use of the term "presence of counsel" does not mean that a suspect need not be advised of his right to counsel prior to questioning, as the State contends, but rather that such language adequately conveys that right. However, because this particular language is not at issue in this case, the State's point is unavailing.
{20} The State's second point, made in reliance on Powell , is that the full right to counsel encompasses only a right to counsel prior to answering any questions, as opposed to prior to questioning . Specifically, the State points out that the defendant in Powell was advised of his right to consult with an attorney before answering any questions and asserts that such warning was held by the United States Supreme Court to be sufficient. See Powell , 559 U.S. at 62-63, 130 S.Ct. 1195. We observe, however, that the warnings at issue in Powell were inverse to the warnings given here. That is, the defendant in Powell was explicitly warned of his right to have counsel prior to answering any questions, but the warnings omitted the right to counsel during questioning. Id. at 54, 130 S.Ct. 1195. However, the defendant was also advised that he had a right to have counsel appointed prior to questioning . Id. Importantly, the Supreme Court did not examine the sufficiency of the warning with respect to the right to counsel prior to answering questions, but rather analyzed whether the warnings in their totality "reasonably conveyed" to the defendant that he had a right to have an attorney present "at all times[,]" including both prior to and during police questioning. Id. at 62, 130 S.Ct. 1195. In concluding that the warnings in their totality satisfied Miranda , the Supreme Court relied on and reaffirmed its decisions in Prysock and Duckworth . Powell , 559 U.S. at 60-62, 130 S.Ct. 1195. We can see nothing in Powell that would indicate that the Supreme Court intended to limit the right to counsel prior to questioning, as outlined in Miranda , Prysock , and Duckworth , so that it would become effective only after questioning began, as the State contends. Nor does the State's contention survive scrutiny when compared to the language in Miranda stating that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning ." Miranda , 384 U.S. at 444-45, 86 S.Ct. 1602 (emphasis added). Therefore, we are not convinced by the State's argument on this point.
{21} We conclude that Miranda requires that a person be warned, at least implicitly, that they have a right to counsel prior to questioning. See, e.g. , United States v. Loucious , 847 F.3d 1146, 1151 (9th Cir. 2017) ("The Miranda warnings at issue ... adequately conveyed notice of the right to consult with an attorney before questioning."); see also Snaer , 758 F.2d at 1342 ("The Supreme Court in Miranda , ... although making clear that one does have the right to consult with counsel before questioning, is ambiguous as to how explicitly the person must be warned of that right." (citation omitted) ); State v. Nave , 284 Neb. 477, 821 N.W.2d 723, 727 (2012) ("[A]lthough the Miranda warnings did not expressly state that [the defendant] was entitled to appointed counsel before questioning, that information was obviously implied from the warnings which the police read to him.").
B. The Miranda Warning in This Case Did Not Reasonably Convey the Right to the Presence of Counsel Prior to Questioning
{22} We now look at whether Deputy Tortorici's warnings reasonably and sufficiently conveyed to Defendant his right to have an attorney present, including prior to questioning. See Powell , 559 U.S. at 62-63, 130 S.Ct. 1195 ; Filemon V. , 2018-NMSC-011, ¶ 48, 412 P.3d 1089 (" Miranda warnings must be given in a manner that is clearly sufficient to grant the suspect an awareness of the right so the suspect can make a knowing, intelligent and voluntary choice to speak."). This requires us to view the warnings *1290 in their totality to determine if Defendant was apprised, either explicitly or implicitly, of the right to have counsel before as well as during questioning. See Duckworth , 492 U.S. at 205, 109 S.Ct. 2875 (holding that the warnings read together "in their totality" can satisfy the requirements of Miranda ).
{23} The warning given to Defendant indicated that he had a right to an attorney "during any and all questioning." The use of the word "during" is pivotal. "During" is a preposition and is defined as "throughout the duration of." Merriam-Webster's Collegiate Dictionary 388 (11th ed. 2005). A "preposition" is "a function word that typically combines with a noun phrase to form a phrase which usually expresses a modification or predication." Id. at 981. Thus, "during" modifies the phrase "you have a right to an attorney" and restricts that right to the duration of any questioning by law enforcement. Even viewing this language in a manner extending the utmost latitude to the law enforcement officer-and bringing common sense to bear-we still cannot see how "during" could be understood to apply backwards to also mean prior or before.
{24} The State's reference to Loucious in its answer brief only serves to underscore this determination. In Loucious , like here, the defendant was warned that he had the right to the presence of an attorney during questioning. 847 F.3d at 1148. And also like here, the defendant was not explicitly warned that he had the right to the presence of an attorney prior to questioning. Id . However, he was advised that if he could not afford an attorney, one would be appointed "before questioning." Id. The court held that the warnings, taken together, "adequately conveyed notice of the right to consult with an attorney prior to questioning." Id . at 1151. In this case, where the balance of the warnings contain no "before questioning" language-or any other language, for that matter-by which we could infer that the full right to counsel was adequately conveyed, there is simply no way to reasonably read the warnings given by Deputy Tortorici as conveying to Defendant that he had a right to an attorney prior to questioning.
{25} In sum, by implying that the right to counsel would be effective only during the interrogation, the warnings given by Deputy Tortorici to Defendant placed a misleading temporal limitation on the full right to counsel under Miranda . Cf. Powell , 559 U.S. at 74 n.8, 130 S.Ct. 1195 (Stevens, J., dissenting) (expressing concern over Miranda warnings that use a misleading temporal limitation on the right to counsel). Therefore, we conclude that the warnings here did not reasonably convey Defendant's Miranda rights. In so concluding, we simply reaffirm the traditional Miranda requirement that a suspect be apprised of the full right to counsel without limitation. "There are substantial practical reasons for requiring that defendants be advised of their right to counsel during as well as before questioning." United States v. Noti , 731 F.2d 610, 615 (9th Cir. 1984). Having counsel present prior to questioning allows counsel to better protect the rights of his or her client, particularly against self-incrimination. See Miranda , 384 U.S. at 480, 86 S.Ct. 1602 ("An attorney may advise his client not to talk to police until he has had an opportunity to investigate the case, or he may wish to be present with his client during any police questioning."); Snaer , 758 F.2d at 1343 ("The right to consult with an attorney before questioning is significant because counsel can advise the client whether to exercise his right to remain completely silent, or, if he chooses to speak, which questions to answer or how to answer them.").
{26} We would be remiss if we did not point out the contrast in language between the first Miranda warning, given from memory, and the second Miranda warning, given from a department-issued card. Not only does the second Miranda warning advise Defendant of his "right to talk to a lawyer and ... the right to have him present with [him] while being questioned" but also that "[i]f [he] cannot afford a lawyer, one will be appointed to [him] before any questionings." In delivering the first Miranda warning from memory, and not from his department-issued card, Deputy Tortorici risked that he would fail to adequately convey Defendant's rights, and that is precisely what happened. While we again note that law enforcement officers are not required to recite the warnings from *1291 Miranda verbatim, "police can always be certain that Miranda has been satisfied if they simply read the defendant his rights from a prepared card[.]" Loucious , 847 F.3d at 1151 (internal quotation marks and citation omitted). This assumes, of course, that the content of the prepared card reasonably conveys a suspect's Miranda rights.
{27} Because the first Miranda warning given to Defendant by Deputy Tortorici was inadequate, the district court erred in denying Defendant's motion to suppress. See Filemon V. , 2018-NMSC-011, ¶ 19, 412 P.3d 1089 (reiterating "the notion that statements that would otherwise be considered voluntary must be excluded for failure to warn").
III. Waiver of Rights Under Miranda
{28} We turn next to Defendant's argument that the district court erred in finding that he had waived his rights after receiving adequate Miranda warnings. There is some question as to whether this argument was preserved for appeal and whether this issue was reserved for appeal in Defendant's plea agreement. See State v. Winters , 2015-NMCA-050, ¶ 18, 349 P.3d 524 (stating that a defendant must preserve an issue for appeal by receiving an adverse determination on a pretrial motion and must also reserve the issue for appeal by expressing intent to do so in the plea agreement). However, we need not decide these questions one way or the other. Instead, we observe that as a matter of law, the rights conferred by the Miranda warnings can only be waived after the full and adequate warnings have been given. State v. Verdugo , 2007-NMCA-095, ¶¶ 13, 17, 142 N.M. 267, 164 P.3d 966. Because we have concluded that the first Miranda warning was inadequate, Defendant could not have validly waived his rights.
IV. Volunteered Statements
{29} The State argues in its answer brief-for the first time-that Defendant volunteered several statements throughout the course of his dialogue with Deputy Tortorici and that these statements should be deemed admissible regardless of the adequacy of the first Miranda warning. "Generally, an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal." State v. Todisco , 2000-NMCA-064, ¶ 11, 129 N.M. 310, 6 P.3d 1032. This Court will affirm a district court's decision under the right for any reason doctrine "so long as the circumstances do not make it unfair to the appellant to affirm." Cordova v. World Fin. Corp. of N.M. , 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901.
{30} The statements in question were made by Defendant to Deputy Tortorici between the first and second Miranda warnings while Defendant was in the back of the patrol unit. Although we have concluded that the first Miranda warning given to Defendant was inadequate, it is still possible that a person can volunteer admissible statements even without adequate Miranda warnings. See Miranda , 384 U.S. at 478, 86 S.Ct. 1602 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); State v. Fekete , 1995-NMSC-049, ¶ 43, 120 N.M. 290, 901 P.2d 708 (recognizing that "even when an accused is in custody, Miranda protections do not apply in those situations where he or she volunteers statements"). "Volunteered statements come within one of two categories: statements which the police did not attempt to elicit, and statements made during custodial interrogation that may be in response to police questioning but are unresponsive to the questions asked." Id. ¶ 44. The second type of statement-one that is unresponsive to the questions asked-is one that "police officers cannot foresee because it is too far removed from the questions asked." Id .
{31} The State enumerates several statements that it argues were volunteered and therefore admissible. The statements are that (1) Defendant asked if the police were "looking for [him]"; (2) Defendant stated he was "trying to figure out who to call to turn [him]self in" and to "tell [law enforcement] they can pick [him] up somewhere ... because it's a bad situation"; (3) Defendant "didn't know what to do ... just been sitting there for the last day, day and a half"; and (4) "there's no place else for me to go, where am I going to go? ... you can't hide forever."
*1292 {32} Aside from listing these four statements and asserting that they were "volunteered and ... admissible," the State provides us with no analysis with respect to each. By making no further argument, the State leaves it to us to determine the voluntariness of each statement in context. To do so, we must determine whether each statement was the product of express questioning or its functional equivalent, see Rhode Island v. Innis , 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), or whether each statement was somehow so unresponsive to the questions asked that Deputy Tortorici could not have foreseen them. Further, we would have to determine, in the context of the ongoing and several-minutes-long conversation that both preceded and followed the giving of the first Miranda warning, whether Defendant himself initiated the questioning or whether Deputy Tortorici initiated the conversation. See State v. Ferrari, 1969-NMSC-146, ¶ 14, 80 N.M. 714, 460 P.2d 244 (stating that when a person initiates the questioning they are not subject to custodial interrogation by law enforcement in that moment and that Miranda "does not prohibit every inquiry in response to volunteered statements where the arresting officer does not initiate the conversation"); see also David M. Nissman & Ed Hagen, Law of Confessions , § 5:8 (2d ed. 2018) ("There is no interrogation, certainly, where the police response is simply a non-interrogatory answer to a question posed by the suspect."). This we will not do.
{33} "To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them." Elane Photography, LLC v. Willock , 2013-NMSC-040, ¶ 70, 309 P.3d 53. "This creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to promulgate case law based on our own speculation rather than the parties' carefully considered arguments." Id. Furthermore, it would be unfair for us to construct the State's argument without the opportunity for Defendant to respond.
{34} Consequently, because addressing this undeveloped argument-raised for the first time on appeal-would be unfair to Defendant, we will not affirm on a right for any reason basis. See Cordova , 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901. Even though we are not deciding this issue, this does not preclude the State from raising on remand, or the district court from considering, whether any of Defendant's statements were volunteered in such a manner that the Miranda protections did not apply.
CONCLUSION
{35} We conclude that the district court erred in denying Defendant's motion to suppress the statements made to Deputy Tortorici between the first and second Miranda warnings because Defendant was not adequately apprised of his right to counsel. Therefore, we reverse and remand to the district court for further proceedings.
{36} IT IS SO ORDERED.
WE CONCUR:
M. MONICA ZAMORA, Judge
HENRY M. BOHNHOFF, Judge

Defendant did not designate the transcript of this hearing as part of the record on appeal. We make this determination based on our own review of the record. The record indicates that the CD containing the lapel videos was admitted into evidence at the second hearing. This is the same CD this Court received as a supplemental exhibit.