The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:_____

Filing Date: September 18, 2025

**No. A-1-CA-41818**

**KARAH MARTINEZ and DAVID MARTINEZ, on their own behalf and on behalf of all others similarly situated,**

Plaintiffs-Appellees,

v.

**MELLOY BROTHERS, INC., d/b/a MELLOY NISSAN,**

Defendant-Appellant.

Consolidated with

**KARAH MARTINEZ and DAVID MARTINEZ, on their own behalf and on behalf of all others similarly situated,**

Plaintiffs-Appellants,

v.

**MELLOY BROTHERS, INC., d/b/a MELLOY NISSAN,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Court Judge**

Feferman, Warren & Mattison
Susan Warren
Nicholas Mattison
Albuquerque, NM

for Appellees

Atkinson, Baker, Rodriguez, P.C.
Justin D. Rodriguez
Clifford K. Atkinson
Owen E. Barcala
Albuquerque, NM

Wright Close & Barger, LLP
Jessica Z. Barger
Brian J. Cathey
Houston, TX

for Appellant

**OPINION**

**DUFFY, Judge.**

**{1}** The formal opinion filed on June 17, 2025, is hereby withdrawn and the following opinion is substituted. In this consolidated appeal, Plaintiffs challenge the district court's order granting Defendant Melloy Brothers Inc., d/b/a Melloy Nissan's motion to compel arbitration, and Defendant challenges the district court's stay of arbitration pending appeal. This is the second appeal related to this motion, and regrettably, we anticipate that our reversal and remand means that we are likely to see this case again.

**{2}** We provide a comprehensive discussion of the procedural history in this case to highlight the procedural issues that can arise when a party resists arbitration on unconscionability grounds, thus triggering the two-step process described in *Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, ¶ 21, 470 P.3d 218. As for the issues raised in this appeal, because the district court did not decide whether three provisions previously determined by the district court to be facially unconscionable were fair and reasonable, contrary to *Rojas v. Reliable Chevrolet (NM), LLC*, 2024-NMCA-003, ¶ 10, 539 P.3d 1253, we are unable to review Plaintiffs' appellate arguments on the merits. We reverse and write only to address the procedure that should be followed on remand.

**BACKGROUND**

{3}     This case began on November 3, 2020, when Plaintiffs filed a consumer protection class action lawsuit against Defendant for violations of the Unfair Practices Act (UPA), NMSA 1978 §§ 57-12-1 to -26 (1967, as amended through 2019), and for unjust enrichment. Plaintiffs alleged that Defendant imposed illegal charges when selling new vehicles and failed to make timely payments on trade-in vehicles. Defendant responded to Plaintiffs' complaint by filing a motion to compel arbitration, citing an arbitration clause in a "Buyer's Order Agreement" that Plaintiffs signed when purchasing a vehicle from Defendant. A copy of the Buyer's Order Agreement is attached hereto as Appendix A and will be referred to as "the Agreement" throughout the remainder of this opinion. The Agreement contains multiple provisions, including a specific arbitration clause.

{4}     Plaintiffs opposed arbitration on grounds that the arbitration agreement was substantively unconscionable, and therefore unenforceable. Specifically, Plaintiffs identified three provisions of the Agreement they claimed were part of the agreement to arbitrate and argued why each was unfairly one-sided or otherwise violative of public policy. First, Plaintiffs argued that the Agreement contains a limitation on damages provision under the heading, "WARRANTY INFORMATION," which states:

> **DEALER IS NOT LIABLE FOR** INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES ARISING OUT OF

THIS SALE OR THE USE OF THIS VEHICLE, INCLUDING BUT NOT LIMITED TO LOSS OF USE, LOSS OF TIME, INCONVENIENCE, TRANSPORTATION, RENTAL, LOSS OF EARNINGS OR PROFITS, OR ANY COMMERCIAL LOSS.

Plaintiffs asserted that the limitation on damages provision was unfair and one-sided.

{5}     Second, Plaintiffs argued that the Agreement limits the statute of limitations for their UPA claim to one year under paragraph 10 of the "Additional Terms," which states, "Any legal claim arising from this transaction must be brought within one year after the date a cause of action accrues, or it will be forever barred." Plaintiffs argued this provision was unconscionable as contrary to public policy.

{6}     Third, Plaintiffs contended that the arbitration clause set forth in paragraph 14 of the "Additional Terms" was unfairly one-sided because it required the parties to abide by the rules of the American Arbitration Association (AAA):

> Any dispute between Buyer and Dealer arising out of this transaction will be decided by arbitration in the City of Albuquerque, New Mexico under the New Mexico Uniform Arbitration Act and the applicable rules of the American Arbitration Association. Any arbitration award may be enforced as provided by law. Buyer and Dealer waive any right to a jury trial.

Plaintiffs argued that the AAA rules impose significant costs on a class-action plaintiff, making the cost of arbitration prohibitively expensive.

{7}     Defendant's reply focused solely on the first step of the *Peavy* analysis, arguing that the Agreement was bilateral and not facially unconscionable. *See Peavy*, 2020-NMSC-010, ¶¶ 20-21 ("First, the court should analyze the arbitration

agreement on its face . . . to determine the legality and fairness of the contract terms themselves. . . . Second, if the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." (internal quotation marks and citation omitted)). Defendant never argued in the alternative that the one-sidedness of the provisions identified by Plaintiffs were justified as fair and reasonable under *Peavy* step two. Likewise, Defendant did not request an evidentiary hearing to present evidence that the challenged provisions were fair and reasonable.

{8} After briefing but without a hearing, the district court entered an opinion and order denying Defendant's motion to compel. The court determined that while the arbitration clause itself was neutral on its face, the damages limitation and time-to-sue provisions were unfairly and unreasonably one-sided and unconscionable. The district court found that the damages limitation "limits Plaintiffs' ability to collect incidental, consequential and punitive damages. Defendant is not so limited, resulting in an unfairly one-sided contract." Continuing, the district court found that the one-year time-to-sue provision, which required Plaintiffs to bring "[a]ny legal claim arising from this transaction" within one year, was one-sided because the benefit of the provision flowed only to Defendant. Finally, the court decided that the class arbitration fees rendered the arbitration clause unconscionable, noting that

Plaintiffs would be required to pay an administrative fee of $3,350 to bring a class arbitration under the AAA rules, and a supplemental administrative fee of $800 to $8,475 (based on the amount of the claim), prior to the first hearing before an arbitrator. The court found that these fees would prevent Plaintiffs from effectively vindicating their statutory rights under the UPA, and were therefore unfairly one-sided. The district court did not reach the second step of *Peavy* "[b]ecause Defendant [did] not, in its reply brief, discuss, much less request, the Court to consider evidence justifying its position that the agreement is fair and reasonable."

{9}     One day after receiving the district court's decision, Defendant filed an expedited motion for an evidentiary hearing, asking the court to allow Defendant to rebut the showing of one-sidedness and justify the arbitration agreement as fair and reasonable. The district court judge recused himself at this point, and twenty days after the district court had entered the order denying the motion to compel, the case was successfully reassigned to a new judge. Two days later, the district court entered an order denying Defendant's motion for an expedited hearing but granted Defendant seven days to submit legal argument or written evidence in support of its position that the arbitration provision was enforceable. The order also granted Plaintiffs an opportunity to respond to Defendant's briefing, and granted Defendant the opportunity to file a motion for reconsideration regarding the order of the prior judge, which the court stated remained the law of the case.

{10}     Recognizing that this procedure would extend past the thirty-day deadline for appealing the district court's order denying the motion to compel arbitration, Defendant filed an appeal in an effort to avoid forfeiting its right to appeal the original order. *See* NMSA 1978, § 44-7A-29(a)(1) (2001) (providing that an appeal may be taken from an order denying a motion to compel arbitration in the same manner as from an order or a judgment in a civil action); Rule 12-201(A)(1)(b) NMRA (providing that a notice of appeal must be filed within thirty days after the judgment or order appealed from is filed). After full briefing, this Court remanded the case to the district court for ninety days with instructions to "conduct an evidentiary hearing on the second prong of the *Peavy* analysis."

**Remand and Second Appeal**

{11}     On remand, the district court conducted an evidentiary hearing but expressly limited its review to the arbitration clause in paragraph 14 of the Agreement. The court indicated that the other contract provisions were irrelevant and restricted the parties' evidentiary presentations concerning the three grounds previously determined to be unconscionable in the district court's original order.[1] The court expressly declined to hear legal argument on any matter.

---

[1] The district court repeatedly interrupted the attorneys during their questioning of witnesses and limited the scope of their examinations. For example, when defense counsel sought to elicit testimony from a witness about how the one-year time to sue provision was fair and balanced by giving examples of how that limitation might benefit a buyer, the witness gave one example before the judge

**{12}** Following the hearing, the district court entered an order on November 9, 2023, finding that the arbitration clause in paragraph 14 of the Agreement was bilateral on its face and was therefore fair and reasonable. The district court expressly found that it was "not permitted by the limited remand from the Court of Appeals to determine whether other unrelated provisions of the Agreements are unfair, unreasonable or unconscionable," but if the other provisions were determined to be unfair and unreasonable, the proper remedy would be severance. The court did not make any specific findings related to the damages provision, but as to the time-to-sue and AAA class arbitration fee issues, the court found that "Plaintiffs timely filed suit in this matter . . . less than one year after signing the . . . Agreements," and issues related to class arbitration under the AAA rules "are not relevant to the issues presently before this [c]ourt. This lawsuit raises . . . only the issue of whether Plaintiffs' *individual* claims against Melloy Nissan must proceed to arbitration." Ultimately, the district court held that "Plaintiffs' complaints against the arbitration clause in the Buyer's Order Agreement, i.e., the one year within which to file a claim, the exclusion of certain types of claims which can be filed by a buyer and the cost of AAA class arbitration do not apply to the specific circumstances of this case."

---

interrupted and indicated that the defense had made their record and the judge did not want to hear any more examples. Likewise, the parties attempted to present evidence concerning the class action fees, but the district court instructed them that the issue was not relevant and did not permit the attorneys to fully examine their witnesses on this subject.

The court stayed further proceedings in the district court until arbitration was completed.

{13}	In light of the district court's ruling, Defendant dismissed the original appeal. Plaintiffs then filed the instant appeal, as well as a motion in the district court asking to stay arbitration until the appeal was resolved. On the same day, Defendant submitted a demand for binding individual arbitration with the AAA. Plaintiffs filed an emergency motion to stay arbitration and application for a preliminary injunction, asking the district court to prevent Defendant from proceeding with arbitration. Following a hearing, the district court entered two orders: the first stayed arbitration pending the present appeal, and the second enjoined the AAA from proceeding with the arbitration. Defendant cross-appeals from these orders.

**DISCUSSION**

**I.	This Court Remanded the First Appeal Because Under *Peavy*, a Moving Party "Should" Have an Opportunity to Present Evidence That a Facially One-Sided Provision is Fair and Reasonable Before a Court Renders a Decision Granting or Denying a Motion to Compel Arbitration**

{14}	Plaintiffs argue that the district court viewed the scope of our remand of the first appeal too narrowly. We begin our evaluation of Plaintiffs' claim by discussing the procedural issues that have delayed resolution of this threshold arbitration issue for over four years now in order to provide a full context for the scope of the limited remand.

{15} In *Peavy*, our Supreme Court provided a helpful analytical framework for courts to apply when presented with a claim that an arbitration provision is unconscionable. 2020-NMSC-010, ¶ 1. *Peavy* clarified the two-step analysis as follows: "First, the [district] court should analyze the arbitration agreement on its face . . . to determine the legality and fairness of the contract terms themselves." *Id.* ¶ 20 (internal quotation marks and citation omitted). "Second, if the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." *Id.* ¶ 21. While this two-step process is simple enough, *Peavy* did not address how parties are to accomplish both *Peavy* steps in practice.

{16} Most commonly, arbitration disputes are raised for the first time in response to a motion to compel arbitration: one party moves to compel arbitration and the other party responds by arguing that the arbitration agreement should not be enforced—here, on substantive unconscionability grounds. At that point, the moving party may reply, arguing (1) that the arbitration agreement is not, in fact, facially one-sided (i.e., *Peavy* step one), (2) that the agreement may be facially one-sided but it is nevertheless fair and reasonable such that its enforcement is not substantively unconscionable (i.e. *Peavy* step two) or (3) both. Options (2) and (3) would require the moving party to respond to the unconscionability argument for the first time in

the reply, meaning that the nonmoving party would not have an opportunity to further address those arguments without filing a motion for leave to file a surreply. While this process is cumbersome, it permits the court to address both *Peavy* step one and *Peavy* step two in the course of a single hearing.[2]

{**17**}    Alternatively, where a moving party focuses only on *Peavy* step one in its reply—as in this case—a question arises as to when and how the parties may address *Peavy* step two. Based on the language of *Peavy*, a movant may reasonably believe that it is not necessary to address *Peavy* step two unless and until the district court finds that the arbitration agreement is facially unconscionable at *Peavy* step one. *See id.* ¶ 21 ("[*I*]f *the court determines the arbitration agreement is facially one-sided*, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." (emphasis added)).

{**18**}    This is exactly what happened in the present case, and our remand was to ensure that the district court reached step two after having found for Plaintiffs in step

---

[2]The New Mexico Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001) and New Mexico's Rules of Civil Procedure are not designed to efficiently or effectively deal with the back and forth required to fully address the parties' respective burdens in an opposed motion to compel arbitration. *See* § 44-7A-29; Rule 1-007.1 NMRA (contemplating a motion, response, and reply). A rule change may alleviate the necessity of seeking court permission to file a surreply, or could set out a different procedure altogether for opposed arbitration motions. *See* Rule 1-007.2 NMRA (setting out a time limit for filing a motion to compel arbitration).

one. *Peavy* is clear that if a district court finds that the arbitration agreement *is* facially one-sided under *Peavy* step one, the moving party "should" be allowed an opportunity to submit evidence. *Id.* In this case, however, the district court ruled on the motion in full without addressing or giving Defendant the opportunity to address *Peavy* step two because Defendant had not done so in its reply.

{19}    Although our Supreme Court has not specifically discussed how parties should address both *Peavy* steps, *Peavy* offers guidance by way of example. In *Peavy*, the defendants filed a motion to dismiss or, in the alternative, to stay litigation and compel arbitration. *See id.* ¶ 6. The plaintiff argued in response that the arbitration agreement was substantively unconscionable and therefore unenforceable. *Id*. The defendants requested an evidentiary hearing to present evidence showing that the agreement was not unfair or unreasonable. *Id*. After conducting a two-day hearing, the district court entered its findings and conclusions, holding first that the arbitration agreement was "ostensibly bilateral on its face" but unfairly one-sided in effect, and second, that the defendants "failed to rebut that the practical effect of the [a]greement unreasonably favors the [defendants]." *Id*. ¶ 7. "Accordingly, the district court denied [the d]efendants' motion to compel arbitration." *Id*.

{20}    In sum, we understand *Peavy* to require that the party seeking arbitration be given an opportunity to make a showing as to an agreement's fairness and

reasonableness in the event the district court determines that the agreement is one-sided.[3] If the district court determines the arbitration agreement is bilateral at *Peavy* step one, then the court may compel the parties to proceed to arbitration. If the court determines that the arbitration agreement is one-sided at *Peavy* step one, the court should refrain from entering an order compelling or declining to compel arbitration until the court has given the party seeking arbitration an opportunity to address *Peavy* step two.[4] We remind trial courts and practitioners that an order denying a motion to compel arbitration is a final order that will start the time for filing an appeal under Section 44-7A-29(a) and Rule 12-201(A)(1)(b).[5] *But see* Rule 12-201(D)(1)

---

[3]Contrary to Defendant's preemption arguments, we do not read *Peavy* to run afoul of the principle that contracts to arbitrate must be construed in the same manner as other types of contracts. We understand the *Peavy* approach to apply any time unconscionability is raised as a defense to contract enforcement; it is not a special rule for arbitration only. *See Atlas Elec. Constr. Inc. v. Flintco, LLC*, 2024-NMCA-046, ¶ 18, 550 P.3d 881 (stating that *Peavy*'s analysis "is used by courts to determine if any contract term is unfairly one-sided, not just arbitration provisions"). While *Peavy* discussed unconscionability in the context of the contract at issue—there, an arbitration agreement—there is no indication that its analytical framework does not apply generally to all contracts. Likewise, we see no indication that *Peavy* shifts the burden away from the party alleging the contract is unenforceable. The two-step analysis simply ensures that the arbitration proponent has an opportunity to rebut a prima facie showing that the contract is facially one-sided. Accordingly, we reject Defendant's preemption arguments.

[4]Whether a hearing is required, or whether the district court in this case was correct in allowing evidence to be presented in a supplemental brief, is a question for another day.

[5]Well after the briefing was complete in the present case, Defendant filed a notice of supplemental federal authority to suggest that this Court lacks jurisdiction over the order granting the motion to compel arbitration because the district court also stayed the proceedings pending completion of the arbitration. Defendant

(identifying certain motions that may affect the finality of the underlying judgment, including a motion to reconsider, and stating that the time for filing the notice of

appears to contend that because the matter was stayed in the district court, the order was not final or appealable. Defendant's notice of supplemental authority cites federal authority interpreting the Federal Arbitration Act (FAA) to allow for an appeal only where the district court has dismissed all of the claims after ordering arbitration. *See Profit v. Coleman*, No. 24-30624, 2025 WL 1113228, at *3 (5th Cir. Apr. 15, 2025) (attached by Defendant as supplemental authority in this appeal); *see also Griggs v. S.G.E. Mgmt., L.L.C.*, 905 F.3d 835 (5th Cir. 2018) ("[I]f a district court orders that a case be stayed pending arbitration instead of dismissing it, that order is not appealable."); *see also* 9 U.S.C. § 16(b)(1); 9 U.S.C. § 3.

We disagree with Defendant's contention that this Court lacks jurisdiction over this appeal. New Mexico courts agree that that orders granting motions to compel arbitration are not final by statute, and instead, "finality must be determined by applying the general law concerning finality of judgments in civil cases." *See N.M. Dep't of Health v. Maestas*, 2023-NMCA-075, ¶¶ 14-15, 536 P.3d 506 (internal quotation marks and citation omitted). It is well established that under New Mexico's Uniform Arbitration Act, "an order compelling arbitration . . . may be a final, appealable order if 'it is the last deliberative action of the district court with respect to the controversy before it.'" *Maestas*, 2023-NMCA-075, ¶ 16 (alteration omitted) (quoting *Britt v. Phoenix Indem. Ins. Co.*, 1995-NMSC-075, ¶ 7, 120 N.M. 813, 907 P.2d 994). An order compelling all claims to arbitration, even where the district court matter is stayed, practically disposes of the matter because all claims are arbitrated. *See State v. Heinsen*, 2005-NMSC-035, ¶ 14, 138 N.M. 441, 121 P.3d 1040 (discussing practical finality and looking "to the substance and effect of an order and not its form" (internal quotation marks and citation omitted)); *Kremer v. Rural Cmty. Ins. Co.*, 788 N.W.2d 538, 547-49 (Neb. 2010) (reviewing approaches to the finality question when district court proceedings are stayed). We are persuaded by the Supreme Court of Nebraska's analysis that "state appellate procedures only affect the timing of an appeal; they neither preclude the enforcement of a valid arbitration agreement nor interfere with the parties' substantive rights." *Kremer*, 788 N.W.2d at 549. The *Kremer* court concluded that the FAA does not expressly preempt state appellate procedural rules, does not "occupy the entire field of arbitration," and its "goals and objectives" are not undermined by permitting appeal. *Id.* at 549. Accordingly, we conclude that the order was final because it practically disposed of the matter and New Mexico's appellate rules of finality are not preempted by the FAA's appellate provisions.

appeal "shall commence to run and be computed from the filing of an order expressly disposing of the last such remaining motion").

## II. The District Court Too Narrowly Viewed the Scope of the Limited Remand and the Second Step of *Peavy*

{21} We now turn to the issues raised in this appeal. In our order for limited remand, we noted that the district court had previously "determined that the arbitration agreement was facially one-sided under the first step of the *Peavy* analysis, but did not reach the second step of the *Peavy* analysis." We ordered that the case be "remanded to the district court to conduct an evidentiary hearing on the second prong of the *Peavy* analysis. Jurisdiction shall vest for no more than ninety (90) days from the date of th[e] order, or no later than November 7, 2023, for the district court to conduct an evidentiary hearing and enter an order on such."

{22} As we have discussed, on remand the district court limited its review to the arbitration clause itself, and expressly declined to consider the three provisions the court had previously determined to be unfair and one-sided. Plaintiffs contend that the district court "failed to understand its task [on remand], which was to consider evidence regarding both the arbitration terms in Paragraph 14, and the damages limitation (front of Buyer's Order) and one-year time-to-sue provision (Paragraph 10), to determine whether the one-sidedness was justified in some way." Plaintiffs also argue that "[t]he district court erred in holding that the high cost of bringing a

class action in AAA was not relevant to the issue of whether the arbitration agreement was substantively unconscionable." We agree.

{23} We believe that the district court's approach on remand resulted from a misunderstanding of *Peavy* step two and this Court's holding in *Rojas*, 2024-NMCA-003. In its order, the district court concluded, "The Court of Appeals clarified in a formal opinion issued October 10, 2023[,] that the second prong of *Peavy* looks to whether the arbitration provision is 'fair and reasonable given the circumstances of the case.'" (quoting *Rojas*, 2024-NMCA-003, ¶ 12). The district court then concluded that its review "is limited to determining whether the arbitration agreement at issue is fair and reasonable given the circumstances of this case such that enforcement of it would not be substantively unconscionable."

{24} *Rojas* is factually similar to this case in that the plaintiff filed suit against a car dealer, and the dealer moved to compel arbitration under a vehicle purchase agreement that contained two terms—an arbitration provision and a damages limitation—that are identical to the terms at issue in this case. 2024-NMCA-003, ¶¶ 1, 3. Like the Agreement in this case, the damages limitation was located on the first page of the buyer's order agreement and the arbitration clause was included on a different page at paragraph sixteen of the "Additional Terms" section. *Id.* ¶ 3. And like this case, the district court limited its analysis to the arbitration clause without considering the impact of the damages limitation. *Id.* ¶ 10. We held that the district

court erred in this regard and should have considered all provisions that "would logically be employed as part of arbitration":

> Considering all claims here are to be submitted to arbitration, this damages limitation provision would logically be employed as a part of arbitration. So when [the p]laintiff challenged the unconscionability of the damages provision and argued that the unfairness rendered the arbitration agreement unenforceable, these provisions must be considered in light of the entire contract. Therefore, analysis for unconscionability in this case must contemplate the contract as a whole, not merely the arbitration language in paragraph sixteen.

*Id.*

{25}     *Rojas* was concerned in part with what constitutes the arbitration agreement and concluded that terms outside an arbitration clause may nevertheless be part of the agreement to arbitrate if they are logically employed as part of arbitration. As applied in this case, *Rojas* instructs that the district court must consider all provisions that could logically be employed as part of arbitration. *Id.* This necessarily includes the three provisions previously determined to be unconscionable by the district court—the time-to-sue provision, the damages limitation, and the costs associated with bringing a class action under the AAA rules. All of these provisions are terms that would be employed as part of arbitration and are therefore logically considered to be part of the arbitration agreement. As such, considering these provisions does not run afoul of *Peavy*'s direction to consider at step two whether the evidence demonstrates the agreement, despite being one-sided, is fair and reasonable. *See* 2020-NMSC-010, ¶ 21.

{26}     The district court's contrary conclusion is grounded in a single sentence in *Rojas*, where this Court stated, "In the second step to the *Peavy* analysis, a court is to determine whether—in spite of the one-sided nature of the agreement—the contract terms are still fair and reasonable *given the circumstances of the case*." *Rojas*, 2024-NMCA-003, ¶ 12 (emphasis added). The district court appears to have understood this to mean that the court should consider contract terms only to the extent they apply to the arguments made in the particular case. Based on that premise, the court determined that the time to sue provision did not apply to the circumstances of this case because Plaintiffs brought suit within one year,[6] and the cost of the class action arbitration was not relevant to the lawsuit because Plaintiffs could proceed individually.

{27}     Given the district court's approach in this case, we clarify that by directing courts to "determine whether . . . the contract terms are still fair and reasonable given the circumstances of the case," *id.*, *Rojas* was simply reaffirming that each claim of unconscionability should be evaluated on a case-by-case basis. *See Peavy*, 2020-NMSC-010, ¶ 13 ("[N]othing in [our case law] expressly lays down a bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued

---

[6]This fact is disputed by Plaintiffs on appeal. Plaintiffs contend that they signed the first Agreement on November 2, 2019, and they signed two subsequent Agreements that were back-dated to November 2, 2019. Plaintiffs did not file their lawsuit until November 3, 2020.

by the defendant drafter will void the arbitration clause as substantively unconscionable. Cases should still be examined on a case-by-case basis." (alteration, omission, internal quotation marks, and citation omitted)). Fairness is considered under the circumstances by looking at the contract terms themselves as well as the practical consequences of those terms. *See Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, ¶ 8, 385 P.3d 619. Under *Rojas* and *Peavy*, the district court should have allowed the parties to introduce evidence as to the fairness and reasonableness of each of the three provisions found to be unconscionable by the first district court judge.

{28}   We note the following for purposes of remand. First, the district court's finding that Plaintiffs brought their claims within one year is irrelevant to the question of whether the time-to-sue provision is substantively unconscionable. The inquiry should not be whether Plaintiffs in this particular case brought their suit within the one-year limitation, but instead whether the contract term itself was grossly unfair. *See Dalton*, 2016-NMSC-035, ¶¶ 6, 21 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract." (emphasis added) (internal quotation marks and citation omitted)). Plaintiffs argued that the one-year time-to-sue provision reduces the time period in which consumers could bring a claim under the UPA by 75 percent. The district court agreed, indicating that the

benefit of this limitation flows only to the drafter. Because the court has determined that this term is one-sided, the parties on remand should be given a full opportunity to present evidence and legal argument pertinent to the question of whether the one-year time-to-sue limitation is justified as fair and reasonable. *See Peavy*, 2020-NMSC-010, ¶ 21 ("The evidence need not show that the agreement is not one-sided, but rather must justify that the agreement's exceptions are fair and reasonable."); *Cordova v. World Fin. Corp. of NM*, 2009-NMSC-021, ¶ 22, 146 N.M. 256, 208 P.3d 901 ("The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns."). Given the age and history of this case, we exercise our discretion to require that the district court enter findings of fact and legal conclusions reflecting its evaluation and resolution of this issue.

{29}    Second, we disagree with the district court's conclusion that "[i]ssues related to proceeding in arbitration as a putative class action, such as the alleged cost of the AAA class arbitration filing fee, are not relevant" because "[t]his lawsuit raises only the issue of whether Plaintiffs' individual claims against [Defendant] must proceed to arbitration." As with the time to sue provision, this aspect of the arbitration agreement must be evaluated by looking at the contract term itself and its consequences, *see Dalton*, 2016-NMSC-035, ¶ 8, and it is relevant that Plaintiffs

filed their complaint as a consumer protection class action. On remand, the court must receive and consider evidence bearing on whether the contractual requirement to use AAA rules, which impose additional fees upon a class action plaintiff, can be justified as fair and reasonable. *See id.* (stating that substantive unconscionability requires a court to "consider whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns to determine the legality and fairness of the contract terms themselves" (internal quotation marks and citation omitted)). Afterward, the district court shall enter findings of fact and legal conclusions reflecting its evaluation and resolution of this issue.

**{30}** Third, the district court suggested that the damages limitation does not apply in this case because Plaintiffs are not bringing a warranty claim. We reiterate that the district court should evaluate whether the damages provision, which disallows Plaintiffs to recover incidental, consequential, and punitive damages, was grossly one-sided at the time the contract was made. *See id.* ¶ 6. In evaluating the evidence and legal arguments made by the parties, the district court will have the opportunity to consider whether *Rojas* is relevant to the disposition of this issue. *See* 2024-NMCA-003, ¶¶ 12-21. As with the other provisions, the district court shall enter findings and conclusions reflecting its evaluation and resolution of this issue.

{31} To the extent the district court believed that these issues could be decided by the arbitrator rather than the court, we note that Defendant did not raise any argument that the Agreement delegates arbitrability issues to the arbitrator in its motion to compel arbitration or in its reply in support of its motion to compel arbitration. To the extent Defendant contends it raised the delegation issue in its response to a separate motion—i.e., in response to Plaintiff's motion to determine whether the Agreement allows for class treatment—we observe that Defendant's response focused only on which decision-maker should decide whether *class actions were permitted*. Defendant did not otherwise argue that the parties agreed that an arbitrator, and not the district court, must decide questions of arbitrability or, more specifically, questions of whether the arbitration agreement was unconscionable and therefore unenforceable. As well, Defendant specifically argued that "[Defendant]'s first-filed motion to compel arbitration . . . must be decided by the [district c]ourt before the [c]ourt decides any other issue or motion in this case." In sum, although Defendant had a full and fair opportunity to raise the issue with the district court before the district court entered its order denying Defendant's motion to compel arbitration, Defendants "never even suggested that the court did not have authority to address the issue." *See Ruppelt v. Laurel Healthcare Providers*, *LLC*, 2013-NMCA-014, ¶ 8, 293 P.3d 902 ("[The d]efendants waived their argument that the arbitrator had exclusive authority to decide arbitrability because they decided to

voluntarily address the enforceability of the [a]greement in the district court and never even suggested that the court did not have authority to address the issue."). On the contrary, Defendant specifically asked the district court to decide the matter. Thus, we conclude Defendant has waived this argument. *See id.*[7]

{32}    Likewise, our disposition today also necessarily requires reversal of the district court's finding that "[t]o the extent that any provision of the Buyer's Order Agreement is deemed to be unconscionable, and this Court does not find any in this case, that provision can be severed from the agreement and the arbitration clause may still be enforced." This is because the district court considered only the arbitration clause and not the entire arbitration agreement, and did not evaluate whether the provisions that make up the arbitration agreement could reasonably be severed while leaving the parties' agreement intact. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 37, 150 N.M. 398, 259 P.3d 803 (evaluating whether unenforceable terms could be severed "without substantially rewriting the contract"); *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 42, 149 N.M. 681, 254

---

[7]We observe that Defendant attempted to insert the issue of who has authority to decide the unconscionability issue into the limited-remand proceedings. On remand, Defendant submitted a brief in advance of the evidentiary hearing as well as proposed findings and conclusions to the district court in which Defendant argued that the Agreement delegated arbitrability questions to the arbitrator. However, that issue was not within the scope of this Court's order for limited remand. As discussed above, Defendant had already waived the issue by that point, and its attempt to raise the issue with the district court on limited remand does not alter our waiver analysis.

P.3d 124 (evaluating severability from the perspective of whether a term "was central to the means by which the parties could resolve their disputes under this particular arbitration provision"). The parties and the court will have the opportunity to revisit these issues on remand.[8]

{33}     As a final matter, we understand both parties do not want this Court to remand the case again. Plaintiffs argue that "[Defendant] has had its opportunity to present its evidence, which was wholly insufficient to justify its unconscionable arbitration agreement." Defendant asserts that "[t]he record contains all the necessary evidence to affirm on *Peavy* step two." As discussed, the district court never made any ruling on the substantive issues raised in Plaintiffs' appeal. Because *Peavy* demands that district courts hear and weigh the evidence in reaching a conclusion regarding *Peavy* step two, remand is required. *See Morris v. Brandenburg*, 2015-NMCA-100, ¶ 53, 356 P.3d 564 ("[I]t is more appropriate in this case to require the district court to render its decision on these claims and explain the grounds for those decisions prior to our review. . . . In considering the claims that it thought unnecessary to consider in the first instance, it will have an opportunity to make any additional factual findings that are more specific to the unaddressed issues and to require further hearings and/or briefing on these issues."). This Court recognizes that remanding

---

[8]We note that the district court found in its April 27, 2021 opinion and order that the three terms at issue could not be severed.

this case again imposes additional costs on the parties, both in time and monetarily, but an appellate court is not in a position to make factual determinations on matters left unaddressed by the district court. *See State v. Gonzales*, 1999-NMCA-027, ¶ 9, 126 N.M. 742, 975 P.2d 355 ("It is a bedrock principle of appellate practice that appellate courts do not decide the facts in a case. Fact-finding is the task of the trial judge or the jury. Our role is to determine whether the lower court has applied the law properly.").

## III.    Defendant's Arguments on Appeal

{34}    We briefly address two arguments raised by Defendant on appeal. First, Defendant asks this Court to affirm the district court under the right for any reason doctrine, arguing that the arbitration clause is bilateral on its face under *Peavy* step one, and therefore, the district court erred by "mov[ing] on to *Peavy* step two without Plaintiffs first establishing some practical inequality attributable to the arbitration provision." We decline to do so. Our Supreme Court has recognized that the "right for any reason" doctrine is an exception that will allow an appellate court to consider an unpreserved issue and uphold a correct lower court ruling on grounds other than those specifically articulated by the lower court. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828. In this case, the issue was both preserved and decided by the district court in a final order. *See* § 44-7A-29(a)(1). Defendant raised these very arguments in the first appeal in this case, but dismissed that appeal

after the district court issued its order on remand. Neither party has briefed or argued the impact of Defendant's dismissal of the first appeal on the law of the case or whether and how appellate review of *Peavy* step one was available in the context of the results of the limited remand.

{35}     On the merits, Defendant has not persuaded us that the district court erred in any of its initial determinations that the provisions at issue are one-sided, either facially or based on their practical consequences. *See Dalton*, 2016-NMSC-035, ¶ 8 ("Substantive unconscionability requires courts to examine the terms on the face of the contract and to consider the practical consequences of those terms."). Defendant acknowledges that the damages limitation is facially one-sided. As for the time-to-sue provision, the district court indicated that the term was unconscionable because the benefit flowed only to the drafter. Defendant has not addressed this aspect of the district court's ruling, focusing instead on whether the provision is violative of public policy. Finally, while Defendant argues that the class arbitration fees could, in theory, apply bilaterally, Defendant has not addressed the district court's ruling that the fees are prohibitively high and prevent a class plaintiff from effectively vindicating their statutory rights. For all of these reasons, Defendant has not met its burden to demonstrate that the district court erred in its *Peavy* step one rulings, and we cannot affirm the district court's order compelling arbitration as right for any reason.

**{36}** Second, because we are reversing and remanding this case to the district court for reconsideration of its order granting Defendant's motion to compel arbitration, it is unnecessary to reach Defendant's argument that this Court should vacate the district court's orders staying arbitration and enjoining Defendant and the AAA from moving forward with arbitration.

**CONCLUSION**

**{37}** We reverse the district court's order granting Defendant's motion to compel arbitration and remand the case to the district court for an evidentiary hearing consistent with this opinion.

**{38}** **IT IS SO ORDERED.**


_____

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**


_____
**ZACHARY A. IVES, Judge**


_____
**KATHERINE A. WRAY, Judge**

# APPENDIX A



## New Vehicle Buyer's Order Agreement

7707 Lomas NE
Albuquerque, NM 87110
Phone 505.265.8721
DEAL # 218816

Date 11/02/2019

Buyer Name(s) DAVID A MARTINEZ OR KARAH R MARTINEZ    Res. Phone ████
Address. ████    Bus. Phone ████
City ALBUQUERQUE    State NM    Zip 87127

| Year | Make | Model | Body | Cyl. | Salesperson |
|---|---|---|---|---|---|
| 2019 | NISSAN | ROGUE SPORT | 4DR SUV AW | 4 | JUAN CARLOS M LO |
| VIN ████ | | Color MAGNETIC BLACK | Odometer 8 | | Stock No. RG22162 |

**Trade In #1**

| Year | Make | Model | Color | | |
|---|---|---|---|---|---|
| 2013 | NISSAN | SENTRA | WHITE | | |
| VIN ████ | | | Odometer 111599 | | |
| Loan Pay Off 18080.08 | | Paid to | | Appraised Value | |

**Trade In #2**

| Year | Make | Model | Color |
|---|---|---|---|
| | | | |
| VIN | | Odometer | |
| Loan Pay Off | Paid to | Appraised Value | |

| | |
|---|---|
| Vehicle Price (As Equipped) | 29888.00 |
| Trade-In Allowance | 8800.00 |
| Loan Payoff on Trade (Buyer is responsible for any trade-in loan payoff quotation error.) | 18000.00 |
| Net Equity in Trade | -8800.00 |
| Subtotal - Difference (vehicle price less equity in trade) | 33555.08 |
| State Excise Tax | 622.00 |
| State Title and Registration Fees | 65.00 |
| Dealer Transfer Service Charge | 379.00 |
| Subtotal | 34801.78 |
| Service Contract   48 /68000 Term: | 2500.00 |
| Credit Insurance | N/A |
| Gap Insurance | 855.00 |
| Other | |
| Other | |
| Total | 38151.78 |
| Less Manufacturer rebate | 3500.00 |
| Less Cash Down-payment | 1000.00 |
| Balance Due | 33651.78 |

### WARRANTY INFORMATION

THIS VEHICLE IS SOLD WITH A MANUFACTURER'S LIMITED WARRANTY. THE MANUFACTURER'S LIMITED WARRANTY IS BUYER'S EXCLUSIVE REMEDY FOR ANY DEFECTS IN THE VEHICLE. DEALER MAY PERFORM REPAIRS UNDER THE MANUFACTURER'S LIMITED WARRANTY, BUT DEALER IS NOT RESPONSIBLE FOR THE MANUFACTURER'S LIMITED WARRANTY OR FOR ANY IMPLIED WARRANTIES MADE BY THE MANUFACTURER. DEALER MAKES NO WARRANTY ON THIS VEHICLE AND DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IF ANY WARRANTY IS DEEMED TO HAVE BEEN MADE BY THE DEALER, OR IF THIS VEHICLE IS SOLD WITH A SERVICE CONTRACT, THE TERMS OF ANY SUCH WARRANTY OR SERVICE CONTRACT ARE AS PROVIDED HEREIN. ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE DURATION OF SUCH WARRANTY OR SERVICE CONTRACT, AND BUYER'S EXCLUSIVE REMEDY IS REPAIR OR REPLACEMENT OF DEFECTIVE PARTS BY DEALER.

DEALER IS NOT LIABLE FOR INCIDENTAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES ARISING OUT OF THIS SALE OR THE USE OF THIS VEHICLE, INCLUDING BUT NOT LIMITED TO LOSS OF USE, LOSS OF TIME, INCONVENIENCE, TRANSPORTATION, RENTAL, LOSS OF EARNINGS OR PROFITS, OR ANY COMMERCIAL LOSS.

DEMONSTRATORS: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

**Dealer states** under oath that to the best of Dealer's knowledge there has been no alteration or chassis repair due to wreck damage on the vehicle being purchased, except as noted on this agreement.

**Buyer states** under oath that to the best of Buyer's knowledge there has been no alteration or chassis repair due to wreck damage on the trade-in vehicle(s), except as noted on this agreement.

DM _____ Customer Initials

Non- _____ parts (Accessories and service parts.) We will install a _____ in your car/truck that is not provided by _____. It is not covered by your _____ new vehicle warranty _____ does not stand behind it, and will not pay for any repair. I understand this limitation _____ Customer Initials.

**The full purchase price is due upon delivery.** This is a buyer's order agreement, not a credit agreement. Dealer is not a lender. Dealer may assist Buyer in obtaining third party financing, but Dealer is not responsible for obtaining financing. Dealer does not guarantee credit approval. Buyer grants Dealer a security interest in the vehicle being purchased under the Uniform Commercial Code to secure full payment. Dealer has all rights and remedies of a secured party under the Uniform Commercial Code. Buyer is not bound by credit terms until credit disclosures have been made. Dealer may retain Buyer's deposit if Buyer fails to complete this purchase after this agreement becomes binding. If this vehicle is delivered pending receipt of financing ("Spot Delivery"), Buyer must return the vehicle to Dealer immediately upon demand if financing fails for any reason.

**SPOT DELIVERY:** Buyer has the right to void this purchase if financing is not approved within 20 calendar days after delivery of the vehicle. Buyer has the right to the return of any trade-in and all money paid by buyer, if buyer voids this contract under this paragraph. To exercise this right, buyer must return the vehicle to the dealer in the same condition as received (normal wear and tear excepted), within 48 hours of receipt of notice that financing was not approved. Dealer shall not charge any fees ██████████████████████████

██████████████████████████████████████

**Buyer agrees to buy and Dealer agrees to sell** this vehicle on the terms on both sides of this agreement. This agreement and any finance contract are an exclusive statement of the agreement between Buyer and Dealer, and cancel and supersede any oral or other agreement, promise or alleged representation concerning the vehicle and this purchase. No modification of this agreement will be recognized unless made in writing and signed by Dealer. **This agreement is not binding on Dealer until signed by Dealer's authorized representative.** This agreement contains a mandatory arbitration provision. See reverse.

██████████████████████████████████████

The Reynolds and Reynolds Company  CCF11000-G 8/16

EXHIBIT
A

## Additional Terms

1. **Buyer is responsible for any damage** to or theft of the purchased vehicle after delivery, regardless of fault. Buyer is solely responsible for insuring the vehicle against damage or theft. Buyer warrants that Buyer has obtained all liability **insurance coverage** legally required for operation of this vehicle. Buyer will indemnify Dealer against any loss, liability or damage arising from Buyer's possession and use of the vehicle.

2. **Buyer sells any trade-in vehicle to Dealer** and warrants that Buyer has the legal right to transfer and will transfer clear title to Dealer free and clear of adverse claims, liens or encumbrances. Buyer will deliver a signed original bill of sale, certificate of title and odometer statement to Dealer for any trade-in. Buyer is **responsible for any trade-in loan payoff quotation error.**

3. **Dealer's trade-in allowance** may include a price discount. For all purposes other than computation of the balance due from Buyer on delivery, Dealer's actual appraisal of the wholesale value of the trade-in (which is available on request) is agreed to be its actual value.

4. **Any trade-in will be delivered in the same condition in which appraised.** If the trade-in is delivered to Dealer more than 30 days after initial appraisal, or if the trade-in is altered or damaged after initial appraisal, the trade-in may be reappraised, at Dealer's option, and the re-appraised value will determine the trade-in allowance.

5. Dealer is not responsible for **changes by the manufacturer** in the price, available rebate, design or accessories of **specially ordered vehicles.** If Dealer's price increases on a specially ordered vehicle, or if a rebate to be received by Dealer is reduced or eliminated, the Buyer's price will be increased by a like amount. If Buyer is dissatisfied with the increase, Buyer may cancel this order and Buyer's deposit and trade-in, or the actual cash value of the trade-in, if sold, minus any loan, will be refunded.

6. If Buyer is applying for financing through Dealer, Buyer authorizes Dealer to submit Buyer's credit application to third party finance sources through whom Dealer customarily arranges financing. (Identification of such sources is available on request.) If Buyer is applying for financing, Buyer authorizes Dealer and any applicable lender to obtain one or more **credit report(s)** concerning Buyer, now and at any time any indebtedness of Buyer is outstanding.

7. Buyer represents that Buyer is of **legal age. Joint Buyers** are jointly and severally bound by this agreement, and any one Buyer may act for another.

8. Buyer will execute any other documents reasonably required by this sale. Buyer appoints Dealer as Buyer's **ATTORNEY-IN-FACT** to complete and sign any such documents in Buyer's name, including bills of sale and certificates of title and registration.

9. This transaction is being entered into and consummated in the City of Albuquerque, New Mexico. This transaction and all rights and duties of the parties will be governed solely by the law of **New Mexico**, and not by the law of any other State, Territory, Tribe or other authority.

10. Any legal claim arising from this transaction must be brought within **one year** after the date a cause of action accrues, or it will be forever barred.

11. Dealer is not responsible for **delay** in delivering the vehicle.

12. Buyer agrees to pay any **taxes** imposed on this transaction.

13. Buyer is liable for **attorney's fees** incurred by Dealer in enforcing this agreement.

14. Any dispute between Buyer and Dealer arising out of this transaction will be decided by arbitration in the City of Albuquerque, New Mexico under the New Mexico Uniform Arbitration Act and the applicable rules of the American Arbitration Association. Any arbitration award may be enforced as provided by law. Buyer and Dealer waive any right to a jury trial.